### STATE *v.* JOHN OUTLAW.

A storehouse, which is used as a regular sleeping apartment, although so used for the sole purpose of protecting the premises, is a dwelling-house in which burglary may be committed.

In an indictment for burglary, where the house alleged to have been broken into was a dwelling-house belonging to A, though occupied by one of his employees: *Held*, that charging in the indictment, the house as "the dwelling-house of A," instead of "a dwelling-house of A," &c., is not such an inaccuracy as to vitiate the indictment.

It is settled, that if the servant, clerk or employee, occupy the house broken into, but have no estate therein as lessee, or tenant at will, or a tenant at sufferance, it should be charged to be the dwelling house of the owner.

(*State* v. *Jenkins*, 5 Jones 480, cited and approved.)

INDICTMENT for Burglary, tried before *Kerr, J.;* at Fall Term, 1874, PERSON Superior Court.

The defendant, John Outlaw, was charged with burglary in two counts, the first charging the house broken into as the dwelling house of one John W. Cunningham, and the second as the house of one James E. Harriss.

Upon the trial the Court directed ten talesmen to be summoned from the bystanders, in addition to the original panel. When the original panel was exhausted, these names were put into a hat and drawn out without the prisoner being informed of his right of challenge thereto. The prisoner did, however, challenge one of the talesmen.

On the trial it was proved that the prisoner did forcibly enter, in the night time, a store-house, the property of John W. Cunningham, one room of which was occupied as the regular sleeping apartment of James E. Harris, a clerk of Cunningham, which room was also used as a counting room. The store was distant about one hundred and fifty yards from the dwelling house of Cunningham. Harris boarded with the family of Cunningham, and had done so for more than four years before the alleged burglary.

The witnesses, Terrell and Cunningham, stated that Harris had no interest in the house, but slept in the store for the protection of the premises. He slept there regularly.

No evidence was offered by the defence. Before the argument, the prisoner's counsel moved the Court to require the Solicitor to elect on which count he would prosecute, which motion was refused.

The prisoner asked the Court to charge the jury that the clerk, Harris, not being the servant of Cunningham, his occupancy of a portion of the building did not make it the dwelling of Cunningham, and as to Harris, there was no evidence that he had any interest in the premises, and as he slept there just to take care of them, there could be no conviction on the second count.

The Court refused to charge as requested, and instructed the jury, among other things, " that the occupancy of a part of the building broken into, by Cunningham's clerk as his regular sleeping apartment, constituted it the dwelling house of Cunningham," and that " a building occupied by a servant or any employee of the owner as a sleeping apartment, is a dwelling house of the owner," and also " that if they believed that

Harris was the clerk of Cunningham, and slept in the store to enhance the security of the premises, he had such a special property in the building as to justify them in finding the prisoner guilty on the second count."

The jury rendered a verdict of guilty, and the prisoner moved for a new trial, on the grounds,

1. That the prisoner was not properly informed as to his right of challenge.

2. That the Court erred in refusing the motion to require the Solicitor to elect between the two counts in the indictment, at the conclusion of the testimony.

3. That the Court erred in instructing the jury that the occupancy of a part of the store house broken, by the clerk of Cunningham as a sleeping apartment, constituted it the dwelling house of Cunningham.

4. That the Court erred in instructing the jury that if they believed Harris to be the clerk of Cunningham, and regularly slept in the store, he had such a special property in the premises as would justify a verdict upon the second count.

5. That there was error in the Court refusing to instruct the jury that there was no evidence that Harris had any interest in the premises, and consequently there could be no verdict on the second count.

6. That the Court erred in instructing the jury that a building occupied by a servant or any employee of the owner, as a sleeping apartment, is the dwelling of the owner.

7. That the Court erred in instructing the jury that if Harris slept in the store regularly, although only for the purpose of enhancing the security of the property by his presence, it became thereby a dwelling house, and the subject of burglarious entry.

The rule for a new trial was discharged, and the counsel for the prisoner then moved in arrest of judgment upon the ground that two distinct offences were charged in the bill, and upon a general verdict no judgment could be rendered.

The motion was overruled, and sentence pronounced, whereupon the prisoner appealed.

*Tourgee*, *Gregory* and *Barnett*, for the prisoner.
*Attorney General Hargrove*, for the State.

PEARSON, C. J. As the bill of indictment contains two counts—one charging the house to be the dwelling ing house of John W. Cunningham, and the other charging the house to be the dwelling house of James E. Harris—the question as to the proper mode of charging the ownership of the house does not arise. A man may the owner of several dwelling houses, one in which he lives, one in which his domestic servants live, and one in which his clerks or other employees live, and it is settled by the authorities referred to in the text books, that if the servant, clerk or employee has no estate in the house as lessee or tenant at will or at suffrance, it should be charged to be the dwelling house of the owner.

In such cases, when the house is outside of the curtilage, the more accurate mode of charging the offence is " a dwelling house the property of," &c., for instance in our case. *The* dwelling house of Cunningham was not the house broken into, but it was a dwelling house of his occupied by his clerk, and the proper description would have been, " a dwelling house the property of John W. Cunningham, then occupied by one James E. Harris."

Suppose a manufacturing company or a railroad company own dwelling houses in which their agents and employees live ; it would be incongruous and absurd to charge it as *the* dwelling house of the company, for although the company has a name, it can have no local habitation.

Provided this was a dwelling house, the inaccuracy in using the definite article " the " instead of the indefinite article " a " is not, according to the authorities, for the purpose is to describe the house, and this is done by charging it to be " *the* dwelling house of Cunningham," although it could have been

more accurately described as *a* dwelling house of Cunningham, occupied by Harris. This case is distinguishable from *State* v. *Jenkins,* 5 Jones, 430. There the owner *occasionally* slept in the store room on the counter; here the clerk had for four years occupied the counting room as his "*regular sleeping apartment.*" The case of Jenkins is made to turn on this distinction, but it is there taken to be settled law that a store house may be made a dwelling house "by being used *habitually* and *usually* by the owner or his clerk as a place for sleeping, but not by being used *occasionally only* for such a purpose." Thus showing that the gist of the crime of burglary is a protection for the place where a man sleeps, and not the place where he transacts business or the place where he takes his meals, and relieving our case from any difficulty because of the fact that the clerk took his meals at the mansion house of Mr. Cunningham. Had the case stopped here we would have been left to draw the natural inference that the clerk made his counting room "his regular sleeping apartment," for the reason that in the family arrangement it was convenient for him to do so, and for the further reason that his presence would be a protection to the store, and his sleeping there would make it a dwelling house, and as such put it under the peculiar protection of the law.

But the case does not stop here. It sets out "upon the examination, the witnesses Terrel and Cunningham stated that Harris had no interest in the premises and slept in the store house *just to take care of the premises,*" though he slept there regularly." Upon this statement the counsel of the prisoner made a very ingenious and forcible argument to bring the case within the principle of *Brown's case,* where the fact of a servant having slept in a barn the night it was broken into, and for several nights before, being put there for the purpose for thieves, did not make the barn a dwelling house; and of *Smith's case,* where the fact of a porter lying in a warehouse to watch goods, being only for a particular purpose, did not make the warehouse a dwelling house, so as to make the

breaking and entering thereof burglary.  See 2 East. Pl. Crim. 497, 501.  A majority of the Justices are of opinion that the words "*just to take care of the premises*," taken in connection with the words " though he slept there regularly," mean that he slept there regularly in order to take care of the goods ; in other words, he made it a dwelling house " just to take care of the premises," and if you will have it, *solely* for that purpose. But he did make it his *regular sleeping apartment*, and it thereby became a dwelling house.  Two of the Justices have grave doubts and conceive it to be a stretch of the law, not in favor but against life.

Pursuing the precedents in the English Courts when the Judges are divided in opinion, we will recommend to his Excellency the Governor to commute the sentence of death into a sentence of confinement in the Penitentiary for ten years, or such other time as may seem to him will be an adequate punishment for the crime of larceny, provided that the prisoner when called on at the next term of the Superior Court to say " why the sentence of death shall not be pronounced," will plead the grant of commutation as a bar of the penalty of death, and submit to such judgment as the Court may render.

There is no error.  Let this opinion be certified to the end that such proceedings may be had as are agreeable to law.

PER CURIAM.                              Judgment accordingly.