## STATE v. CATO-POTTS.

If a part of a storehouse, communicating with the part used as a store, be slept in habitually by the owner, or by one of his family, although he sleeps there to protect the premises, it is his dwelling house.

If the person who sleeps there is not the owner, nor one of his family or servants, but is employed to sleep there solely for the purpose of protecting the premises, he is only a watchman, and the store is not a dwelling house.

INDICTMENT for *Burglary,* tried before BUXTON, J., at Spring Term, 1876, of CUMBERLAND Superior Court.

The prisoner's counsel requested the Court to charge the jury: "That according to the evidence, they should in no event convict the prisoner of the crime of burglary, for the reason that the store-house was not a dwelling house in the sense contemplated by the law relating to burglary; nor was it a dwelling house of John Davis, for he did not occupy it himself. Nor was it occupied by his clerk or servant, or by any member of his family or household, but merely by a person employed to sleep there, to watch the premises and goods."

His Honor declined the instruction, and charged the jury:

" If you believe from the evidence that John Davis, the prosecutor, had partitioned off a little room in his store for a sleeping room ; had put a bed in there and fitted it up for a sleeping apartment, and had employed John A. Lamb to sleep there for the sole purpose of protection to the premises and goods, and that he had slept there for a month for that purpose only ; and that the little room had been regularly as a sleeping room for that purpose only for four years by John Davis or others employed by him for that purpose; then in the eye of the law the store-house was a dwelling house, in reference to which the capital crime of burglary could be committed ; and it was a dwelling house of John

9

Davis, although John A. Lamb was not his clerk, nor servant, nor a member of his family or household, or in any way connected with him except as an employee, employed by him to sleep there as a guard, for the protection of the premises and goods."

To the refusal of his Honor to charge as requested, and to the charge of his Honor, the prisoner excepted.

There was a verdict of "guilty," and thereupon the prisoner moved for a new trial and *venire de novo*. Rule discharged. Judgment, and appeal by prisoner.

*Attorney General Hargrove, Battle & Son* and *Sutton*, for the State.

*McRae & Broadfoot*, for the prisoner.

RODMAN, J.   There is no statute in North Carolina changing the common law definition of burglary, which is: The breaking and entering of *the dwelling house* of another in the night time, with intent to commit a felony therein. The question in this case is, was the house into which the prisoner broke and entered *the dwelling house* of the prosecutor, Davis? The house belonged to Davis and was used as a store; a small space was partitioned off from the store-room for a bed-room, and it had been occupied as such regularly for about four years, either by Davis, or by some clerk, or other person by his license. It was slept in on the night of the breaking, and had been on every night for a month before that night, by one Lamb who was employed by Davis to sleep there for the purpose of protecting the premises. Lamb was not a member of the family of Davis, nor employed by him otherwise than as stated.

The Attorney General relies on the *State* v. *Outlaw*, 72 N. C. Rep., 598. That case can only be distinguished from the present by the fact that Harriss (the person who slept in Cunningham's store) was a clerk of Cunningham and

boarded in his family. It was in evidence that he slept in the store for the protection of the premises. We do not doubt the decision in that case. The difference between that case and the present may seem very slight, yet if they be such as are recognized by the authorities from which we derive the law on this subject, we are bound to recognize them as distinguishing the two cases. Considering the various ways in which houses may be occupied, it is not the fault of the law if the line of separation is thin, or even artificial. The following quotations are all from 2 East. P. C., pp. 497, 498. It is clear that if no person sleeps in a house it is not burglary to break in it. *Hallard's case.* In *Brown's* case all the Judges agreed that the fact of a servant having slept in a barn the night it was broken open, and for several nights before, being put there for the purpose of watching against thieves, made no sort of difference in the question whether burglary or not. *So a porter lying in a warehouse to watch goods, which is only for a particular purpose,* does not make it a dwelling house.

In *Fuller's case,* the house, which was a new one, was finished except the painting and glazing, and a workman employed by the owner, slept in it for the purpose of protection; but no part of the owner's family had taken possession of it. Held not a dwelling house.

In *Harriss' case,* it appeared that the prosecutor had lately taken the house, and on the night of the offence, and for six nights before, had procured two hair-dressers, none of his own family, to sleep there for the purpose of taking care of his goods and merchandise therein deposited; but he himself had never slept there, not any of his family. Held not a dwelling.

In *Davis' case,* one Pearce owned the house, but resided at a distant place. It was not inhabited in the day time, but a servant of the owner slept there constantly for about three

weeks, solely for the purpose of protecting the furniture till a tenant could be procured. Held not a dwelling house.

It seems from these cases, that if part of a store-house communicating with the part used as a store, be slept in habitually by the owner, or by one of his family, although he sleeps there to protect the premises, it is his dwelling house. If the person who sleeps there is not the owner or one of his family or servants, but is employed to sleep there solely for the purpose of protecting the premises, he is only a watchman, and the store is not a dwelling house.

The distinction is not altogether arbitrary or without reason. To break in a house where the proprietor or any of his family sleep, is apparently a more heinous offence and calculated to produce greater apprehension and alarm, than to break into a house occupied primarily for business, although a watchman is employed to sleep there. It is competent for the Legislature to punish the latter offence in any manner otherwise than capital that it may think proper. I have not seen that by the legislation of any State such an offence is capital, as it would be in this State if held to be burglary. In New York it is burglary by statute, but it is punishable only by imprisonment in the penitentiary.

As our opinion on this question entitles the prisoner to a new trial, it is unnecessary to consider the other questions raised on the record.

There is error in the judgment below, which is reversed. Let this opinion be certified to the end, &c.

PER CURIAM.                    Judgment reversed.