## STATE v. ERNEST WILLIAMS.

### *Burglary—Store-house—Indictment.*

1. A store-house is a dwelling-house in which burglary may be committed, where it appears that a clerk or servant of the owner habitually slept in a bed-room therein, even though for the purpose of protecting the property.   See next case.

2. The indictment in such case which lays the property in the owner of the store "then occupied" by the clerk, is in accordance with the suggestion, in *State* v. *Outlaw*, 72 N. C., 598

(*State* v. *Outlaw*, 72 N. C., 598; *State* v. *Jenkins*, 5 Jones, 430; *State* v. *Potts*, 75 N. C., 129, cited, distinguished and approved).

INDICTMENT for burglary tried at Spring Term, 1884, of MECKLENBURG Superior Court, before *MacRae, J.*

The jurors, &c., present that the defendant, about the hour of two in the night, &c., a dwelling-house, the property of L. M. McLendon, then occupied by L. J. Hooks, feloniously and burglariously did break and enter with intent, &c.

It appears from the evidence that L. M. McLendon was the owner of a store-house in which there were goods, at Matthews, in the county of Mecklenburg, situate across the street from his dwelling-house, and upon a lot separate from any other house; that there was an upper floor in the store-house in which some goods were kept, on the back part of which a space was partitioned off in the corner for an office, and in the rear of the office part there was a bed-room reached through the office; that McLendon's clerk, L. J. Hooks, occupied this bed-room as his sleeping apartment and boarded with McLendon; that the room was built and the clerk put there to sleep for the purpose of protecting the property; that Hooks, the clerk, habitually slept in this bed-room, kept his trunk and clothing there, and that it was his home; that a part of the consideration for his services was his board and the sleeping apartment; that on the night of the 30th of December, 1883, Hooks and three other persons occupied the sleeping-room; that about two o'clock in the morning, they were awakened by a watchman from the outside of the building, and having armed themselves they made search in the house for a supposed burglar; that they found the prisoner, under a counter, and upon his person sundry articles of value, that appeared to have been taken from the stock of goods in the store; that other goods were found that appeared to have been removed by some one from the show-cases in which they properly belonged.

There was evidence tending to show that the prisoner had entered the house through an upper window, which he reached by placing boxes one upon another; that a pane of glass had been removed from the window-sash by using a butcher-knife found inside the window with putty on it; that the window through which the breaking was made was closed in the even-

ing, the early part of the night of the burglary, when Hooks retired to his sleeping-room.

The court charged the jury that, "if Hooks was a clerk of McLendon and occupied the room because it was convenient to occupy it, even though it was also for the protection of the goods in the store, and had his sleeping apartment there, which he habitually used as such, it was a dwelling-house belonging to McLendon, and occupied by Hooks, and the breaking into it in the night-time with intent to commit a felony would constitute the crime of burglary."

To this charge the prisoner excepted, and prayed the court to instruct the jury that, according to all the evidence in the cause, he could in nowise be convicted of burglary, because the store-house was not a dwelling-house in the sense contemplated by the law relating to that crime. This instruction the court declined to give, and the prisoner excepted. There was a verdict of guilty and judgment of death, from which the prisoner appealed.

*Attorney-General,* for the State.
*Messrs. Wilson & Son,* for prisoner.

MERRIMON, J. This case is in all material respects like that of *State* v. *Outlaw,* 72 N. C., 598, and must be governed by it.

The store-house and the goods therein belonged to McLendon. Hooks was his clerk, boarded with him and *habitually* slept in the store-house as his home, for the protection of the property. He had no lease or estate in the property, nor did he claim any, not even in the office or his bed-chamber adjoining it. He occupied it as his employer's clerk, and by virtue of that relation. The employer constructed the bed-chamber to be used by his clerk habitually, the motive being the protection of the property. The fact that the clerk got less wages because his employer boarded him and furnished the sleeping apartment in no sense changed the relation of the parties as employer and clerk. The latter occupied the room only as clerk, and there is no evidence

that he had or claimed to have any right to stay there in any other capacity. He neither owned nor controlled the use of his bed-chamber or the office adjoining it.

The property, therefore, was properly alleged in the indictment to be in McLendon. Indeed, the indictment seems to have been framed in pursuance of a suggestion made in the case above cited.

The sleeping apartment in the store-house communicated, up and down the stairs, directly and indirectly, through the office adjoining it, inside of the house with the store apartments, and was used by the owner McLendon as a sleeping chamber for his clerk, and the latter so occupied it, and habitually slept there. He kept his trunk and clothing there and it was regarded by him as his home. He did not sleep there only *occasionally :* he slept there *habitually*, and it was intended by his employer to be a regular sleeping place. This material fact distinguishes this case from that of *State* v. *Jenkins*, 5 Jones, 430. In that case the late Judge BATTLE said: " The breaking into a store-house, then, as such, is not burglary, and cannot become so, unless its situation makes it a part of the dwelling-house, or unless it is otherwise made to assume the character of a dwelling-house.

This may be done by being used *habitually and usually*, by the owner or his clerk or servant, as a place for sleeping, but not by being used *occasionally, only*, for such a purpose."

It was suggested on the argument that the clerk slept in the house "for the purpose of protecting the property." Grant that he did, this does not modify or affect the material and essential fact that he slept there *habitually*—that he had his trunk, his clothes, his home there, and that his employer and the owner of the property so intended, provided and directed, and therefore the law extended to the clerk, while he slept there, and to the house in which he slept, that measure of protection it extends to all men while they take repose in their dwelling-houses in the night-time.

This and like cases are clearly within the wise purpose of the law creating and defining the crime of burglary. The law treats the

habitations of men as sacred and regards them with particular favor at all times, and especially in the night-time, when they are closed and men are presumed to take quiet repose in sleep. Then, they have the right to rest securely in their dwelling-houses, free from fear, terror or danger. It is hence made a great crime to break into and invade the sanctity of the dwelling-house for a felonious purpose, thus producing terror and unusual peril to the inmates.

This law embraces, not a particular class of dwelling-houses, but all dwelling-houses, having about them the quality of permanency, in which men regularly, habitually sleep at night, no matter to what other purpose they may be devoted, nor what the motive prompting the owner of the house to establish it as a sleeping place for himself, his family, his clerks, his agents or his servants. Nor is a party confined to one dwelling-house; he may have two, three or more, and the law extends its protecting arm to all. And so, he may have one dwelling-house, and other houses; a store-house for example, near to his dwelling-house, in which members of his family, himself, his clerks and servants, or some one or more of them *regularly* and *habitually* sleep at night, and such houses are treated as part and parcel of his dwelling-house, and the law protects the same as part of it.

The counsel for the prisoner pressed upon our attention the case of *State* v. *Potts,* 75 N. C., 129. In that case, Mr. Justice RODMAN, while recognizing the law as properly laid down in the case of *State* v. *Outlaw, supra,* draws a nice and subtle distinction between the case where the person occupying the store-house is its owner or a member of his family or his servants, and the case where the person sleeps in it solely for the purpose of protecting the premises. In the latter case, he insists that the occupant is only a watchman, and the store-house cannot be regarded as a dwelling-house, although it had been occupied regularly as a sleeping place by the owner, his clerk or some other person by his license for about four years.

It is difficult to see how, if the store-house had become a dwelling-house in the eye of the law, the sleeping there by a *watchman* to protect the premises could change or destroy that feature.   For, if one break into a dwelling-house in the night-time for a felonious purpose, though the owner and his family be temporarily absent, and no one be in it, it is burglary; and so it would still be burglary, though a watchman were sleeping in it to protect the property.   His presence, no matter for what purpose, could not change the character of the house as a dwelling-house.

However, the distinction he seems to take and which is taken in some of the cases he cites, seems to be, that where one sleeps in a house simply as a watchman to protect the property, and sleeping there is merely incidental to the chief purpose of watching the property, then the house cannot be treated as a dwelling-house, and to break into it in the night-time with a felonious purpose would not be burglary; but if sleeping in such a house shall be regular and habitual in the ordinary course of living—not occasional, and merely incidental—and the protection of the property is only incidental, though intended, then, such a house would be a dwelling-house in which burglary might be committed.

However well founded this nice distinction may be, it does not affect the case before us, because the owner of the store-house had established the sleeping apartment in it, and his clerk slept there regularly and habitually.   It was his sleeping place, and the protection to the premises was incidental.   He was not there simply to watch and protect.   He was there to sleep, and his presence there at night afforded some incidental protection to the property.

We have examined the record and find no error in it.   The judgment must therefore be affirmed.   Let this be certified.

No error.                                          Affirmed.