## STATE v. ADOLPHUS PRESSLEY.

*Burglary—Store-house—Preliminary Examination.*

1. See syllabus in preceding case.

2. The fact that the clerk in this case did not "board" with the owner of the store is immaterial; and there was no evidence that he leased the bedroom as a tenant so as to give him exclusive control over it.

3. The law does not require the examination of a committing magistrate to be certified under seal.

(*State* v. *Jake*, 2 Winst., 80; *State* v. *Outlaw*, 72 N. C., 598; *State* v. *Wilson*, 1 Hay., 243; *State* v. *Jenkins*, 5 Jones, 430; *State* v. *Potts*, 75 N. C., 129; *State* v. *Davis*, 77 N. C., 490; *State* v. *Parish*, Busb., 239, cited and approved).

Indictment for burglary tried at Spring Term, 1884, of Mecklenburg Superior Court, before *MacRae, J.*

It is not necessary to an understanding of the opinion to state the facts of this case, as they are very similar to those of the preceding case of *State* v. *Williams*.

The special instructions asked by the prisoner were to the effect that if the clerks occupied the room in the store-house, where the burglary is alleged to have been committed, solely for the purpose of protecting the property, and were not members of the family of E. D. Latta, or his servants, but occupied the same under an arrangement to receive less salary in consideration of such occupancy, then, that their sleeping in it habitually would not make the building a dwelling-house, so as to constitute the act of breaking with intent, &c., burglary. And that the jury be instructed to find whether Latta received a consideration for the use of the room, and if so, a tenancy between them would be established, and in such case to make the offence burglary the room so occupied would have to be broken into.

His Honor refused the instructions, and among other things told the jury that if they believed the evidence, they were clerks, that is, servants of Latta, and that there was no evidence of a tenancy—a renting of the room so as to give the clerks exclusive control of the same.

There was a verdict of guilty, and the prisoner appealed from the judgment pronounced.

*Attorney-General,* for the State.
*Mr. Platt D. Walker,* for prisoner.

MERRIMON, J. The indictment contains three counts, laying the ownership of the dwelling-house, first in E. D. Latta, secondly in his clerks jointly, and thirdly in one of them. The court instructed the jury that the evidence, if believed by them, proved the ownership in Latta, thus cutting the prisoner off from the defense that the clerks had leased the sleeping chamber from their employer, and it was not, therefore, a part of the store-house, and that the latter could not be treated as a dwelling-house.

It is insisted that this is error. We think otherwise, and that the instruction given by the court was correct.

Latta was the owner of the store-house and the stock of goods therein. He did not lease, or profess to lease, to his clerks the sleeping apartment, nor did they in any legal sense become his tenants. They occupied it by virtue of their relation to their employer, as clerks, and had no other control over it. Their employer agreed to pay them stipulated wages, or salary, and supply them with their sleeping place designated, and necessary gas; and one purpose had in view by both parties was that they should sleep there regularly, as a protection to the goods in the store. They were to occupy the room as a part of the service they had agreed to render as his clerks.

Besides, it is unreasonable, and altogether improbable, that the owner of the store-house and the goods in it would let to any one a chamber in his store, communicating with all parts of it, so that he could not in his discretion control it at any time and have the absolute occupancy of it. The nature of the transaction goes to show conclusively that Latta was the owner of the sleeping chamber, and his clerks occupied it under and for him,

and by virtue of their employment. Their possession was his possession. *State* v. *Jake,* 2 Winst., 80; *Rex* v. *Stock,* R. & R., 185.

This case is almost identical with that of *State* v. *Williams,* decided at this term, *ante,* 724. It differs from it only in the fact that the clerks did not "board" with their employer. In this respect it also differs from the case of *State* v. *Outlaw,* 72 N. C., 598.

This is not a material fact. The term "board" is used in the sense of taking meals with the employer in his house or elsewhere. It is not essential that a man's clerks shall eat at his table, or in his house, in order to establish the relation of employer and clerk. He may feed them in his own house, at a hotel, a restaurant, or in the store house, or they may "board" themselves wherever it suits their convenience.

The essential purpose of the law creating and defining burglary is to protect the house of men where they regularly dwell and habitually sleep in the night-time. It is to afford a large measure of protection to a man while he sleeps in his regular place of abode for sleeping. And in this sense, one person may have several dwelling-houses for his own comfort and convenience, and that of his family, servants and employees; and he may make a house where he carries on a business, as for example, sells goods, or manufactures and sells tobacco, or other things, a dwelling-house in which he may sleep himself, or have his clerks and servants sleep regularly and habitually. And it is none the less a dwelling-house in the eye of the law, because the leading motive for making it so is the incidental protection afforded the property stored in it. The question is, does the owner, or his clerks, or his servants, or employees, regularly abide, and habitually sleep there as their place of rest and repose.

There is no legal reason why men may not make their business houses also their dwelling-house, and have all the benefits legitmately arising therefrom. Indeed, on the contrary, there are cogent reasons in many supposable cases why they should

do so, and it is not at all uncommon in the course of business life. *State* v. *Wilson*, 1 Hay., 243; *State* v. *Jenkins*, 5 Jones, 430; *State* v. *Jake, supra; State* v. *Outlaw, supra; State* v. *Potts*, 75 N. C., 129; *State* v. *Davis*, 77 N. C., 490.

The counsel for the prisoner objected on the trial to the reading of his examination before the committing magistrate, the mayor of Charlotte, on the ground that the certificate of the mayor attached thereto was not under seal, and that the examination only set forth that the prisoner was informed of his rights in that respect, and was not examined in the presence of the witnesses. The court overruled this objection and the prisoner excepted.

This exception was not pressed on the argument before us, but nevertheless, we feel called upon to advert to it. The examination is not sent up, but the summary of it set forth in the case settled upon appeal for this court, shows that the statute was fully observed by the mayor in his caution to the prisoner. In addition to what he said by way of caution, he read the statute to him, and he has no ground of complaint in this respect. The statute does not require that the examination shall be certified under the private or official seal of the committing magistrate. The exception cannot be sustained. *State* v. *Parish*, Busb., 239.

We find no error in the record, and the judgment must be affirmed. Let this be certified.

No error.      Affirmed.