STATE v. FOSTER.

(Filed December 23, 1901.)

BURGLARY—*First Degree—Acts 1889, Ch. 434.*

> Under Acts 1889, Ch. 434, creating two degrees in burglary, a
> person may be convicted of burglary in the first degree for
> breaking into a store-house where there is a bed-room at-
> tached, and in which one regularly sleeps, and is sleeping
> at the time, and there is a breaking and entering into the
> bed-room.

INDICTMENT against Ben Foster, R. S. Gates, Harry Mills
and Frank Johnston, heard by Judge *Frederick Moore* and a
jury, at June (Special) Term, 1901, of the Superior Court
of BUNCOMBE County. From a verdict of guilty and judg-
ment thereon, the defendants appealed.

*Brown Shepherd,* for *Robert D. Gilmer, Attorney-General,*
and *Frank Carter,* for the State.

*Thomas Settle* and *M. W. Brown,* for the defendants.

FURCHES, C. J. The defendants are indicted and con-
victed of burglary in the first degree. The facts are substan-
tially as follows: D. J. McClelland is the owner of a store
at a place called "Emma," a few miles from the city of Ashe-
ville, in the county of Buncombe. Samuel H. Alexander is
his clerk, and had been for more than three years boarding
in the family of McClelland and sleeping in the store. There
was a room in said store building fitted up and furnished
with a bed and other furniture as a sleeping apartment, in
which said Alexander kept his trunk and other belongings,
and slept there, and had done so regularly for three years or
more. On the night of the 8th of February, 1901, he closed
and fastened all the windows and outer doors of said store

building, and between eight and nine o'clock he went into his bed-room, but, thinking some customer might come, and not being ready to retire, he left a lamp burning in the store-room. There was a partition wall between his sleeping-room and the store-room, in which there was a doorway and a shutter, but the shutter was rarely ever closed and was not closed that night. Soon after he went into his sleeping room, he heard a noise at one of the outer doors of the store building, and, thinking it was some one wanting to trade, he went to the door and asked who was there, when some one answered that we wanted to come in, wanted some coffee and flour. He then took down the bar used in securing the door, unlocked the same, and when he had opened the door about twelve inches, still having the knob in his hand, two men forced the door open, rushed in the house, covered him with pistols, told him to hold up his hands, that they had come for business. With the pistols still drawn upon him, they marched him *into his bed-room,* where they searched him and the things he had in the room, taking his pistol and other things. They then carried him into the store-room and made an effort to break into the postoffice department, there being a postoffice kept there. But not succeeding readily in getting into this, they abandoned it for the present, saying they supposed there was nothing in it, except postage stamps, and they would attend to them later. They then turned their attention to an iron safe and compelled him to assist in opening it, one of them still holding his pistol on him. After the safe was open and one of them going through it, taking what money and other valuables he found, a cat made a noise in the back part of the store, and the man with the pistol bearing on him turned his attention to that; and, as he did so, Alexander seized his own pistol they had taken from his room and which the man who was robbing the safe had laid on the end of the counter, and shot the man robbing the safe, and also shot the

45——129

other man, but, in the meantime, the man whose attention had been attracted by the cat shot Alexander.   They were all badly shot, but none of them died.

We have made this summary from the testimony of Alexander, who was the only witness examined as to the facts, neither of the prisoners going upon the witness stand, and there being no other witness to the transaction.   There were two other persons, Henry Mills and R. S. Gates, indicted as being present, aiding and abetting in committing the crime, and tried at the same time with Ben Foster and Frank Johnston, who were charged as principals.   They were all convicted of burglary in the first degree, and the sentence of death being pronounced upon them, they all appealed to this Court.

There are several exceptions, but all of them that seem to require discussion resolve themselves into one question, and that is the only question pressed upon the argument in this Court.   Indeed, the learned counsel for the prisoners stated in his argument that the case turned upon this one point. That is this:   That under Chapter 434, Laws of 1889, changing the law and establishing two degrees in the crime of burglary, a party can not be convicted of burglary in the first degree for breaking into a store-house where there is a bed-room, and one regularly sleeps there, unless there is a breaking and entering into the bed-room.   This is an important question, and it is singular that it has not before been pressed or called to the attention of the Court.   The case of *State v. Pearson,* 119 N. C., 871, was called to our attention by the State, but it does not seem to be authority upon the point discussed in this case. Therefore, no case was cited, and we are unable to find any that decides, or even discusses, the point made in this case, and it devolves upon us to construe this statute.

Burglary at common law was the breaking and entering a dwelling-house in the night time with a felonious intent.  And

this was the law of burglary in this State until the passage of the Act of 1889. In this definition were included houses used as a part of the dwelling, such as smoke-houses and pantries within the curtilage. It was not the fact alone that they were within the curtilage that made it burglary to break into and enter them, but it was the fact that they were used as a part of the dwelling, as well as being within the curtilage. A store-house or a workshop, though within the curtilage, were not such houses as would make one guilty of burglary to break and enter at night with a felonious intent. *State v. Jenkins,* 50 N. C., 430; *State v. Langford,* 12 N. C., 253. Indeed, to break and enter a store-house, in which no one slept, with intent to steal, was not a criminal offense at common law, nor in this State until made so by statute. *State v. Dozier,* 73 N. C., 117. But it was held in England and in this State that a store-house, or any other house in which one regularly slept, was a *dwelling-house,* and one upon which burglary might be committed. *State v. Williams,* 90 N. C., 724; *State v. Outlaw,* 72 N. C., 598. It is thus seen that it is not the fact that it is a *store-house* that makes it a house in which burglary may be committed; but it is the fact that some one regularly or habitually sleeps there, that makes it a *dwelling-house.* And the law was the same as to any other house in which one regularly or habitually slept. This discussion of the law of burglary in England and in this State prior to the Act of 1889, was necessary to enable us to put a construction upon that act.

It is an act to "change the law in relation to the crime of burglary." It divides the crime into two degrees, first and second. The first is punished with death and the second degree with imprisonment in the penitentiary for life, or a less term, at the discretion of the Court. The first degree is where the crime is committed "in a dwelling-house, or in a *room used as a sleeping apartment in any building,* and any

person is in the *actual* occupation of any part of said dwelling-. house or sleeping apartment at the time of the commission of said crime, it shall be burglary in the first degree."

"Second. If the said crime be committed in a dwelling-house or sleeping apartment not actually occupied by anyone at the time of the commission of the crime, or if it be committed in any house within the curtilage of a dwelling-house, or in any building not a dwelling-house, but in which there is a room used as a sleeping apartment and not actually occupied as such at the time of the commission of said crime, it shall be burglary in the second degree."

The object of the statute must be taken into consideration and both sections must be construed together, in construing the Act of 1889. It is manifest that the object of the Legislature was to modify the law of burglary as it then existed, and reduce the severity of its execution. At common law, it was not necessary that anyone should be in the dwelling-house at the time the crime was committed. 4 Chitty Blackstone, star page 225. And this was the law in this State, and the penalty was death, until the passage of the Act of 1889. Under that act, which is the law now, to constitute burglary in the first degree and make it a capital offense it is necessary that some one should be in a *dwelling-house* when the crime is committed, and, if there is not, the crime is burglary in the second degree, which is not punished with death; also, at common law, and in this State, until the Act of 1889, buildings within the curtilage and used in connection with the dwelling-house were held to be a part of the dwelling-house, and the crime committed in one of them was burglary and the punishment death. But under the Act of 1889, to break, enter, etc., such a house is burglary in the second degree and the punishment imprisonment. Under the common law and the law of this State until the Act of 1889, to commit the crime in a store-house or other house where there was a sleeping

apartment, regularly or usually occupied as such, it was burglary, and the punishment was death.   This was not so because it was a *store-house* or other house, but because it was held to be a *dwelling-house,* and the punishment was death. But under the Act of 1889, to make the offense burglary in the first degree and punishable with death, a breaking and entry into a store-house or other house where one regularly or usually sleeps, does not constitute burglary in the first degree, unless the burglar breaks and enters the *sleeping apartment.* A store-house stands precisely upon the same ground as *any other house* where there is a sleeping apartment, in which the crime of burglary might have been committed before the Act of 1889, and must be given the same meaning.

We are forced to this construction in order to give any meaning to that part of the statute which says, to constitute the crime of burglary in the first degree, it must be *"in a room used as a sleeping apartment in any building,* and any person is in the actual occupation of said dwelling-house or sleeping apartment at the time of the commission of said crime, it shall be burglary in the first degree." Were we not to give the Act of 1889 this construction, it would leave the law of burglary the same as to store-houses and other houses having a sleeping apartment where one regularly or usually slept, just as it was before the Act of 1889. This we are not justified in doing.   And the second section provides:   "If the said crime be committed in   *   *   *   a sleeping apartment not actually occupied by anyone at the time of the commission of the crime,   *   *   *   it shall be burglary in the second degree."   It is, therefore, seen that the statute makes it necessary that the sleeping apartment should be *actually occupied* by some one at the time the offense is committed, or the crime is burglary in the second degree; and thereby clearly showing that such buildings, as

store-houses and other houses in which there is a sleeping apartment, are no longer regarded as dwelling-houses, as there is a clear distinction made between them and dwelling-houses. In dwelling-houses, the breaking and entry is burglary in the first degree, if anyone is *in any part of the house at the time*. In other houses, where there is a sleeping apartment, *the sleeping apartment* must be broken in and entered, and must be actually occupied.

The question then comes to the facts of this case to determine whether the prisoners are guilty of burglary in the first degree. There was a regular sleeping apartment which had been occupied by the clerk, Alexander, for three years, and he was actually present in his sleeping apartment when the burglarious assault was made. The outer door and windows were securely fastened, and the door to his room, his sleeping apartment, was open. The prisoners by trick and fraud procured him to unfasten the door, when they forced their way into the house against his heroic efforts to prevent them. Upon their gaining an entrance in this way, they covered him with pistols, made him throw up his hands, and marched him into his sleeping apartment, and there, in his presence, they went through his desk and other things, taking his pistol, purse and other property. They then marched him into the store-room at the muzzle of their pistols, where the tragedy related above was enacted. Everything necessary to constitute the crime of burglary in the first degree, under the statute of 1889, is present and pronounced in this case, if there was a breaking into the sleeping apartment. And this is where, if we understand, the prisoners rest their defence. This can not avail them. If the door to the sleeping apartment had been closed and fastened, and they had not broken and *entered into it,* it may be their defence would have availed them. But as this door was not closed (and the evidence is that it rarely ever was), the outer doors and windows were his reliance and protection.

They were the *doors to his sleeping apartment,* and gave him the protection of the law.

We also hold that Alexander's being carried into his sleeping apartment by force, and under the influence of a loaded pistol bearing upon him, was a breaking—a constructive breaking—as we do not understand that the statute of 1889 makes any change in the law as to the mode of breaking. Mills and Gates were charged with aiding and abetting, and were convicted. We have examined their exceptions with care and do not think they can be sustained. So far as we can see, they have had a fair trial.

As we see no error, the judgment of the Court below is
Affirmed.

DOUGLAS, J., concurring in part. I concur in the opinion except in so far as it relates to the defendants Mills and Gates. It appears from the evidence that Alexander's bed-room was not in the main store building, but was in one end of an annex thereto, with a door leading into the other part of the annex, and a door from there leading into the main store-room. There was no opening direct from the bed-room into the store-room, which could be reached only by going through the other part of the annex. Both these doors were open, and in fact were rarely shut. I think that the defendants Foster and Johnston are guilty of burglary in the first degree in view of their entering Alexander's bed-room in the manner they did. This seems to me to amount to a constructive breaking, certainly more so than merely raising a latch or breaking a pane of glass for the mere purpose of reaching something through the window. On the other hand, even in the view taken by the majority of the Court, if there had been no communication at all between the bed-room and the store-room, or if the inner door had been fastened, merely entering the store-room would not have been burglary, but would have been breaking and enter-

ing a store-house, punishable under section 996 of The Code. The defendants Foster and Johnston, were guilty of two crimes, store-breaking and burglary, the latter being in addition to the former and not necessarily dependent upon it. Here comes the point upon which I differ with the Court. I can not recall any evidence connecting Mills and Gates with any crime except breaking into the store. They do not appear to have had anything to do with the murderous assault upon Alexander, or entering his bed-room. Suppose that Alexander had been securely locked up in his bed-room, and that Foster and Johnston, without disturbing him in any way, had merely broken into the store and stolen a piece of meat, would they have been guilty of burglary? If they had not been guilty, those waiting outside could not have been guilty. Can we make aiders and abettors of one crime constructively guilty of another and distinct crime not within the contemplation of their original act? We must carefully distinguish between the essential and the accidental facts of a case. The defendants Mills and Gates were guilty as accomplices in the crime of store-breaking, but I have very grave doubts whether they can be held guilty in law of burglary, and such doubts I must resolve in favor of human life.

There are peculiar circumstances in this case which may tend to swerve our judgment. We are naturally indignant at the outrageous assault upon Alexander, whose splendid courage and manly devotion to duty command our admiration and respect; but we should not let our feelings blind our judgment. Those who committed the assault will pay the penalty of their lives, but those who had nothing to do with it, and who probably never contemplated any crime greater than that of theft, should be punished only for the offense of which they are guilty. If they are *accessories before the fact* to the burglary, and they were certainly not present when the bed-room was entered, then they are punishable under section 980

of The Code, which provides that, "Any person who shall be convicted as an accessory before the fact in either of the crimes of murder, arson, burglary or rape, shall be imprisoned for life in the penitentiary."