STATE, Respondent v. BEST, Appellant

(232 N.W.2d 459)

(File No. 11352. Opinion filed August 22, 1975)

Samuel Schaunaman, Asst. Atty. Gen., Pierre, for plaintiff and respondent; Kermit A. Sande, Atty. Gen., on the brief.

Charles J. Mickel, Rapid City, for defendant and appellant.

DUNN, Chief Justice.

The defendant, Daniel Best, was convicted of second degree manslaughter by a Pennington County Circuit Court jury on July 18, 1973, in the death of his son, Steven. He appeals claiming that the trial court erred (1) in permitting the prosecutor in his opening statement to reflect upon defendant's taking or not taking the stand on his own behalf, (2) in permitting the introduction of a statement given by defendant, and in allowing the testimony of Deputy Sheriff Holloway in regard to the statement previous to proving the corpus delicti, (3) in permitting

Dr. Kellum to testify and give opinions partially based on hospital records which were not in evidence, (4) in improperly instructing the jury on aiding and abetting, and in failing to direct a verdict of acquittal for defendant for failure to show that defendant participated in any actual abuse of the child, and (5) in sentencing the defendant to serve ten years in the state penitentiary after being informed at the time of arraignment that the maximum sentence for second degree manslaughter was four years. We affirm.

The facts of this unfortunate case are set out in full in the companion case of *State v. Best*, 89 S.D. 227, 232 N.W.2d 447, and will not be repeated here. It should be noted, however, that Daniel Best was present and accompanied his wife and Steven to the hospital or emergency room each time Steven suffered one of his many unexplained injuries. It should also be noted that Dr. Kellum testified that in December 1971, he had at least two conferences with the defendant regarding Steven's unusual number of bruises and injuries. In these discussions, Dr. Kellum stressed to the defendant the absolute necessity for protecting the environment in which Steven lived. There is no evidence to indicate that any efforts were made by the defendant to protect the child, and in less than one year Steven was dead.

The questions raised as to permitting the statement of defendant into evidence and permitting the deputy sheriff to testify as to the circumstances surrounding this statement before the proving of the corpus delicti, and in permitting Dr. Kellum to testify and give opinions partially based on hospital records not in evidence were fully covered in *State v. Best*, 89 S.D. 227, 232 N.W.2d 447, and will not be discussed here except to state that the court reaffirms its position on these points as applied to this defendant.

■ The defendant objects to an instruction on aiding and abetting which was given in this case. The instruction reads:

"All persons concerned in the commission of a crime, whether it be a felony or a misdemeanor, who either directly and actively commit the act constituting the offense, or who knowingly and with criminal intent aid and abet in its commission, or, whether present or

not, who advise and encourage its commission, are regarded by the law as principals in the crime thus committed and are equally guilty thereof.

"One who does not actively commit the offense, but who aids, promotes, or encourages its commission either by act or counsel or both, is not deemed by law to be guilty and shall not be found guilty of the crime unless he did what he did knowingly and with criminal intent. To abet another in the commission of a crime implies a consciousness of guilt in instigating, encouraging, promoting, or aiding the commission of such criminal offense.

"In the case of a parent, each parent has an equal duty to protect their child. Because of this, if the father knows that the mother is committing the crime of child abuse upon their child or is inclined to do so and such father stands passively by and does nothing to protect their child or to prevent the mother from so abusing their child, it being reasonably within his power to do so, such father is considered as having aided and abetted the mother and thereby becomes a party to such child abuse of their child and equally guilty. If, under such circumstances, the child dies as a result of such child abuse by the mother, the father is held to be equally responsible for the death of their child."

The evidence shows a series of unexplained and serious injuries to this child over a period of more than one year. The evidence further shows that defendant was warned by Dr. Kellum of the probability of child abuse in Steven's case some eleven months before the child's death. The evidence also shows that Daniel Best was present on most of the occasions when these injuries occurred, and especially on November 26, 1972, when the child received the fatal blow. The defendant argues that "mere presence" is not enough to permit a finding of guilt under the aiding and abetting statute and cites cases that have so held; however, those cases do not deal with a situation where a parent is present after being alerted to the probability of child abuse during a long history of unexplained injuries. True, this child

abuse is based on circumstantial evidence, but this is not fatal to the state's burden of proof. Eyewitness testimony is very rare in child abuse cases. Under all the circumstances here, the trial court did not err in giving an instruction on aiding and abetting. The real gist of defendant's argument is a claim of insufficiency of the evidence to support a conviction. Resolution of the sufficiency question turns on acceptance of the "Battered Child Syndrome" as an established medical diagnosis. This, too, has been fully discussed in *State v. Best,* supra, where this diagnosis was accepted and it is equally sound as applied to this defendant.

■ Two claims of error are raised in this appeal which were not argued in the Barbara Best case. The first involves an opening statement by the state's attorney in which, among other things, he stated:

> "Now, there will be other testimony to show that the Bests, the defendant and his wife, could not explain this serious skull fracture other than they surmised he might have fallen and struck his head upon an ordinary telephone."

Defendant argues that this comment constituted a reversible infringement on his constitutional privilege against self-incrimination. It is well settled that it is reversible error for the prosecution in any manner to call to the attention of the jury the failure of defendant to testify. *State v. Brown,* 1965, 81 S.D. 195, 132 N.W.2d 840; *State v. Lindic,* 1927, 51 S.D. 516, 215 N.W. 495; *State v. Wimpsett,* 1922, 46 S.D. 6, 189 N.W. 983. The defendant has a constitutional right to be protected from such comment and this right may not be abrogated by the legislature. *State v. Wolfe,* 1936, 64 S.D. 178, 266 N.W. 116, 104 A.L.R. 464; *State v. Vroman,* 1922, 45 S.D. 465, 188 N.W. 746.

■ One factor that needs to be considered here is the fact that the challenged comment appeared in the opening statement rather than in the closing statement or during the course of the trial. Defendant's objection must fail as the prosecutor's statement constituted a valid comment on the evidence he intended to produce.

In analyzing the general rule that prohibits prosecution comment on defendant's unwillingness to testify, the court in *State v. Brown,* supra, noted that: "Comment on the failure of the accused to testify is different from comment on his failure to produce evidence in his defense, when it appears within his power to do so." The court also cited this statement from *State v. Knapp,* 1914, 33 S.D. 177, 144 N.W. 921:

> "But, if the evidence before the jury disclosed the existence of witnesses or evidence which the accused might have produced in his defense, the statute does not forbid comment upon the fact that the accused has failed to produce such witnesses or evidence. * * * Where no direct allusion is made to the fact, but the error rests in an alleged intent to accomplish such purpose by indirection, each case must be considered upon its own particular facts." 33 S.D. at 182, 183, 144 N.W. at 922.

■ Thus, error does not lie in the fact that the jury's attention is drawn in some way to the supposed importance of defendant's not taking the stand. Rather, the prosecution may not directly comment, or make indirect allusions designed to accomplish that purpose and which could in fact accomplish it.

The following quote from *State v. Knapp,* supra, disposes of the question here raised by the defendant:

> "The precise question is whether the statement, 'Does he deny having ever forced his presence upon her?' *was, or could have been, understood by the jury as a suggestion that the accused had not taken the stand* as a witness to deny that he had 'forced his presence upon her.' * * * The entire closing address of the assistant state's attorney is in the record, and it appears therefrom that immediately preceding the language quoted the attorney had said: 'His duty was, if he wanted to meet that girl —to give her candy and money, and show her other favors to which, under other circumstances, there would be no objection—to do that at her home, with the consent of the parents, and knowledge, and did he do it? On the contrary, he did not do it; but, on the contrary,

he persisted in putting his presence upon her to the extent that the stepmother of this girl, anxious for her well-being, knowing the little girl was out a little later than usual, happened to go to the door as the girl came there. She finds this man' going away. She goes out and overhauls him, and has a talk with him as a mother would.' Then follows the language excepted to. Could the language assigned as error, taken in connection with that which preceded it, have been considered by a jury of intelligent men as an allusion to the failure of the defendant to testify at the trial. We think it clear that the language excepted to must have been understood by the jury only as a statement that appellant, when accused by the stepmother of improper conduct with the girl, failed to deny the acts she charged him with, and that it *could not have been understood by them as a reference to anything other than what was charged and not denied in this conversation.*" (emphasis supplied) 33 S.D. at 181, 144 N.W. at 921.

Similarly, the state's attorney in the present case was referring to the explanation made by the defendant when he gave his voluntary statement to Deputy Sheriff Holloway on November 26, 1972. This statement was produced and introduced in evidence. A reasonably intelligent jury could not have understood this comment as a reference to defendant's inability or unwillingness to explain his son's skull fracture at another time. (Also notable is the language: "could not explain," as opposed to cannot or will not explain.) This was a permissible comment on evidence which the state intended to and did introduce.

■ The final claimed error is in sentencing the defendant to ten years in the state penitentiary after being advised at the time of arraignment that the maximum sentence for second degree manslaughter was four years. Defendant argues that the following dictum from *People v. Chatman,* 1974, 56 Ill.2d 233, 306 N.E.2d 874, supports his contention:

"If the possibility of a 20-year maximum sentence had not been mentioned, and such a sentence had been imposed, the defendant might have had a grievance." 56 Ill.2d at 237, 306 N.E.2d at 876.

This case involved the trial court's incorrect statement of the statutory maximum for attempted robbery as 20 years rather than 14. Defendant there argued that this misstatement motivated him to plead guilty, and had he known the true maximum he would have chosen to go to the jury. Thus, he presumably lost his jury trial because of the error. Contrary to the situation there, defendant in the instant case was not prejudiced in the exercise of his rights as the *opportunity to plead guilty remained open to defendant*. At best he only lost a possible opportunity to take advantage of the trial court's error. Furthermore, defendant was not *offered* a four-year sentence by the bench and there is no need to assume that the trial court would not have subsequently corrected its mistake.

Defendant has cited as authority for this last point the ABA Standards for Criminal Justice Post-Conviction Remedies § 6.3. This standard is inapplicable to the present case as that prohibition against greater penalty is designed to free a defendant from intimidation in the exercise of his rights rather than allowing one to benefit from nonprejudicial mistakes.

Affirmed.

All the Justices concur.