**STATE of South Dakota, Plaintiff and Respondent,**

v.

**William Nicholas CELLI (# 12209) and Glynis J. Brooks (# 12224), Defendants and Appellants.**

**Nos. 12209 and 12224.**

Supreme Court of South Dakota.

Argued Jan. 12, 1978.

Decided March 2, 1978.

Leann Larson Finke, Asst. Atty. Gen., Pierre, William J. Janklow, Atty. Gen., Pierre, on brief, for plaintiff and respondent.

Steven M. Christensen of Driscoll, Mattson, Rachetto & Christensen, Deadwood, Reed C. Richards of Richards & Richards, Deadwood, for defendants and appellants.

PORTER, Justice.

CASE SUMMARY

This is an appeal from the judgments of conviction of defendants Brooks and Celli for burglary in the fourth degree. Defendants contend that the trial court erred in

denying their motion for a directed verdict for the State's failure to prove that the structure the defendants entered was the "dwelling house" of the complainants. We agree with this contention and therefore reverse and remand each cause for entry of a judgment of acquittal.

## FACTS

On Sunday, January 30, 1977, defendants left Deadwood, South Dakota, to go to Newcastle, Wyoming, a distance of approximately seventy-five miles, to secure employment. It was necessary for them to hitchhike, because they had no car. Defendant Brooks had been employed there previously and knew they could both obtain work upon arrival. The sun was shining when they started out, but the day was chilly. They dressed as warmly as they could and began hitchhiking in the morning. Because they received no rides, they were forced to walk all afternoon. At approximately 3:00 p. m. they passed the Cheyenne Crossing store, which is about ten miles from Deadwood. They continued walking for two miles west of the Crossing, when defendant Celli slipped into the snow on the embankment along the road. As he fell he grabbed defendant Brooks, and they tumbled down to the bottom of the embankment. Both defendants tried unsuccessfully to climb up the embankment, but the snow was too deep. They then attempted to cross a small partially frozen creek at the bottom of the embankment, to get to a point where they thought they could get back up on the road. As they crossed the creek both defendants broke through the ice, soaking their footwear, and pants halfway up their legs. After about fifteen minutes of effort, they made it back onto the highway. By that time their outer clothing was damp and covered with snow. The temperature was below freezing.

They decided that they would try to hitchhike back to Deadwood, but were unable to get a ride. The sun was beginning to set and they were numb from the cold. They had traveled about one-half mile back from the point where they slipped off the road when they noticed the cabin in question. The stiffness of their feet from the cold was making it difficult for them to walk, so they entered the cabin, breaking the lock on the front door. Defendant Celli immediately crawled into a bed to warm up, and defendant Brooks attempted to light a fire in the fireplace. They rummaged through drawers to look for matches, which they finally located and started a fire. Finally defendant Celli emerged from the bedroom, took off his wet moccasins, socks and coat, placed them near the fire, and sat down to warm himself. After warming up somewhat they checked the kitchen for edible food. That morning they had shared a can of beans, but had not eaten since. All they found was dry macaroni, which they could not cook because there was no water.

A neighbor noticed the smoke from the fireplace and notified the police. When the police entered the cabin, both defendants were warming themselves in front of the fireplace. The defendants were searched, but nothing belonging to the cabin owners was found. They were taken to the Lawrence County jail, where they remained incarcerated until February 25, 1977, the day of the trial. They were tried and convicted of fourth-degree burglary. They appeal from their convictions.

## ISSUE

Although defendants make several allegations of error by the trial court, the issue dispositive of this appeal is: Was the cabin which defendants entered a "dwelling house" as used in SDCL 22–32–11?

## DECISION

*Conclusion*—We conclude that the cabin which defendants entered was not a "dwelling house" as used in SDCL 22–32–11.

At the time defendants were charged, SDCL 22–32–11, the statute under which they were convicted, provided:

> Every person who breaks and enters the *dwelling house* of another at any time in such manner as not to constitute burglary as otherwise specified in this chapter

with intent to commit a crime is guilty of burglary in the fourth degree. (Emphasis added)

SDCL 22–32–14, as it existed at the time of the charges involved here, defined "dwelling house" as used in SDCL 22–32–11 as "every house or edifice, any part of which has usually been occupied by any person lodging therein at night, and any structure joined to and immediately connected with such a house or edifice." "Dwelling house" is one of the elements which the State must prove for a conviction under SDCL 22–32–11, and defendants contend that the cabin they entered did not fit within the statutory definition.

The cabin in question was owned by a Deadwood resident, whose wife testified at trial that their residence is in Deadwood where they had lived for fifteen years, and that neither she nor her husband had occupied the cabin at night during the preceding three to four years. The cabin was unoccupied at the time defendants entered it. The investigating officer testified that there were no fuses in the fuse box, the bathroom fixtures had been disconnected for the winter, and there were mice tracks throughout the cabin. The owner's wife testified that their son and daughter-in-law used the cabin every summer and the owner and his wife would use it occasionally during the daytime in the winter and in the fall after the children had gone.

We conclude that the evidence viewed in the light most favorable to the State shows that as a matter of law this cabin is not a "dwelling house" within the meaning of SDCL 22–32–11. Protection from invasion of one's "dwelling house" originated at common law, as the following quotation indicates:

"It is evident that the offense of burglary at common law was considered one aimed at the security of the habitation rather than against property. That is to say, it was the circumstance of midnight terror aimed toward a man or his family who were in rightful repose in the sanctuary of the home, that was punished, and not the fact that the intended felony was successful. Such attempted immunity extended to a man's dwelling or mansion house has been said to be attributable to the early common-law principle that a man's home is his castle." *Smart v. State*, 244 Ind. 69, 72, 190 N.E.2d 650, 652 (1963).

If the cabin in the present case had *usually* been occupied by someone at night, it would fit our statutory definition of "dwelling house." But the testimony at trial indicated that it had only been occupied at night in the summertime.

"The house must be occupied as a dwelling house, and not merely be suitable or intended for such purpose. The owner or occupant, or some member of his family, or a servant, must sleep there. . . . Occasionally sleeping in a house is not enough to make it a dwelling house." *Carrier v. State*, 227 Ind. 726, 732, 89 N.E.2d 74, 76 (1949).

In the present case not only was the cabin usually unoccupied, but it was not ready for occupancy at the time defendants entered. For several months prior to defendants' entry, no one had stayed there. An unoccupied cabin with the electricity off and the bathroom facilities disconnected does not fall within our statutory definition. It is important to note, however, that a structure such as this cabin is not left unprotected by our statutes simply because it does not fall under the protection of the fourth-degree burglary statute. At the time the charges against defendants were brought, other statutes protected all buildings, not just "dwelling houses." *See* SDCL 22–32–9 and 22–32–16 as they existed at the time of this trial. We also note that since this trial, the South Dakota burglary statutes have been revised, and no longer have a provision for fourth-degree burglary or the "dwelling house" element found in the statute before us.[1] Although the revised statutes do not

---

1. The revised burglary statutes protect against invasions of "occupied structures" and "unoccupied structures," but do not contain the phrase "dwelling house." *See* SDCL 22–32–1, 22–32–3, and 22–32–8.

contain the phrase "dwelling house," at the time of defendants' trial it was still an element which the State was required to prove; we conclude that the State failed to do so.

At the close of the State's case at trial, defendants moved for a directed verdict of acquittal in conformity with SDCL 23–45–5. The defendants filed a brief in support of their motion, expressly calling to the attention of the trial court the cases of *Carrier* and *Smart, supra.* The motion and brief alleged that the State failed to establish that the cabin which defendants entered was a "dwelling house" as required by the fourth-degree burglary statute. Although defendants did not renew their motion at the close of their case, their motion is not deemed waived. *See State v. Olson,* 83 S.D. 493, 161 N.W.2d 858 (1968).

## CONCLUSION

We conclude that under the evidence viewed in the light most favorable to the State, the cabin which defendants entered was as a matter of law not a "dwelling house" as used in SDCL 22–32–11, and the defendants' motion for a directed verdict should have been granted. We, therefore, reverse the judgments of the trial court and remand each cause for entry of a judgment of acquittal.[2]

All the Justices concur.

2. Defendants briefed and argued several other issues on appeal, one being that under the facts here they were entitled to raise the common law defense of necessity, and that their proposed instruction submitting that defense to the jury should have been given. *See generally, State v. Johnson,* 289 Minn. 196, 183 N.W.2d 541 (1971); *State v. Marley,* 54 Haw. 450, 509 P.2d 1095, 1109 (1973); *Journal of Criminal Law and Criminology,* "The Defense of Necessity in Criminal Law: Right to Choose the Lesser Evil," E. Arnolds and W. Garland, Vol. 65, No. 3, p. 389, 291–293 (1974). Because of our decision, we do not reach this issue.