STATE of South Dakota, Plaintiff and Appellee,

v.

Wesley Walter WILSON, Defendant and Appellant.

No. 12944.

Supreme Court of South Dakota.

Argued Sept. 8, 1980.

Decided Oct. 15, 1980.

Rehearing Denied Nov. 20, 1980.

Miles F. Schumacher, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on the brief.

N. Dean Nasser, Jr., Sioux Falls, for defendant and appellant.

DUNN, Justice.

Defendant, Wesley Walter Wilson, was found guilty by a jury of first-degree burglary. Wilson was sentenced to ten years in the state penitentiary. From this judgment, defendant appeals. We affirm.

Mrs. Bernice Thissell had departed on an extended vacation to visit her son in Washington, sometime in mid-December 1978. Thissell's residence was located one and one-half miles west of the Centerville exchange of Interstate 29, on the west side of the road. She had resided in this home since 1931, a term of forty-eight years. All of her personal property and belongings were left within her home during her vacation, from which she returned on March 13, 1979.

Sometime around 6:50 p. m. on March 8, 1979, Mrs. Alice Kennedy, a neighbor, observed a pickup truck stop at the end of the Thissell driveway. As Mrs. Kennedy approached the pickup in her car, the pickup proceeded around the next corner. Mrs. Kennedy was unable to ascertain the make or color of the pickup.

On the same day, at about 7:30 p. m., Terry Ostrem, who lived one-half mile west of the Thissell residence, observed a pickup truck stop one mile west of his home. The lights of the truck were shut off. Terry Ostrem noticed the dome light of this truck come on. He heard a door slam and the dome light went off. The pickup then backed up onto the road and proceeded east toward the Thissell residence. It stopped at the Thissell residence and again shut off its lights.

Terry Ostrem, whose suspicion had been aroused, proceeded to the Thissell residence in his own pickup. Upon his approach, the mystery pickup fled without turning on its lights. Terry Ostrem gave chase reaching speeds in excess of seventy miles per hour, but was unable to overtake the fleeing vehicle.

Terry Ostrem returned to the Thissell residence where he observed a lot of footprints in the fresh snow. These tracks went from the road across a yard fence and into the front door of the Thissell residence. The front door of the home was slightly open with a pile of blankets stacked inside the door. Terry Ostrem called his brother Donald Ostrem from a neighbor's phone. Upon returning to the Thissell residence, a pickup again drove past. Terry Ostrem was able to make out the color of the pickup as two-tone brown and light brown, the same colors as defendant's pickup. He also went to the road and compared the track marks left in the snow by this truck with those left by the truck he chased and concluded that they were the same tracks.

At approximately 8:30 p. m., Terry Ostrem, accompanied by his brother Donald, walked around the house and observed a single set of footprints leading in a northwesterly direction away from the Thissell residence. Terry Ostrem also observed that a set of footprints led from the front door of the Thissell residence to the point at which the footprints headed in a northwesterly direction. These footprints were also seen by Sheriff Albers, who had arrived upon the scene. Upon investigating the house, certain items of personal property were found to be missing.

Donald Ostrem and Sheriff Albers followed the single set of footprints leading in a northwesterly direction. The two men followed these footprints for over a mile. Defendant was found at the end of these footprints lying exhausted on top of a snowbank. There were no tracks leading beyond defendant. Defendant offered no explanation of his condition and presence in the snow and was then arrested.

At trial, defendant did not take the stand but offered testimony which indicated he had been rabbit hunting with his brother–in–law. His evidence further indicated their pickup had become stuck and defendant set out on foot to get help. His tracks did not leave from the spot where the pickup was supposed to be stuck in the snow. The jury returned a verdict of guilty of first-degree burglary.

Defendant's first assignment of error is that the evidence is insufficient to justify a verdict of first-degree burglary.

In determining the sufficiency of evidence on appeal the test is whether or not there is evidence in the record which, if believed by the jury, is sufficient to sustain a finding of guilty beyond a reasonable doubt. In making this determination, this court will accept that evidence and the most favorable inferences that can be fairly drawn therefrom which will support the verdict. *State v. White*, 269 N.W.2d 781 (S.D. 1978); *State v. Dietz*, 264 N.W.2d 509 (S.D. 1978); *State v. Luna*, 264 N.W.2d 485 (S.D. 1978); *State v. Henry*, 87 S.D. 454, 210 N.W.2d 169 (1973). We also recognize that "it is permissible to prove all elements of a crime with circumstantial evidence." *State v. Rober*, 86 S.D. 442, 444, 197 N.W.2d 707, 709 (1972). *State v. Herrald*, 269 N.W.2d 776 (S.D. 1978); *State v. Shank*, 88 S.D. 645, 226 N.W.2d 384 (1975). Mere presence at the time and place of the burglary, however, is not sufficient to justify a conviction. *State v. McCreary*, 82 S.D. 111, 142 N.W.2d 240 (1966).

Mindful of the fact that it is not our function to resolve conflicts in the evidence, nor to pass on the credibility of witnesses or weight of the evidence, we find the evidence sufficient to justify a verdict of first-degree burglary. *State v. Minkel*, 89 S.D. 144, 230 N.W.2d 233 (1975). We have carefully examined the transcript in this case and in applying the standard of review set out above we are satisfied that it does justify an inference that defendant was one of the people who entered the Thissell residence on March 8, 1979, and was tracked from there until he was apprehended. Defendant's exhausted condition and the single set of footprints leading from the front door of the Thissell residence directly to defendant could easily be inferred by the jury to show participation in and flight from the burglary. In some instances evidence of footprints, standing alone, would not be sufficient, but this is not such a case. We are not dealing with an urban situation where the accused is merely passing by, or appears to have been inadvertently present. Nor is it a situation where the defendant was sitting in a vehicle outside a burglarized dwelling in an area where some reasonable inference of innocence could be drawn from his mere presence. The facts in this case are couched in a rural, sparsely populated setting. It is difficult, at best, to explain a single set of footprints leading away from the scene of the crime directly to defendant. There is utterly no evidence to show how defendant happened to be found at the end of these incriminating footprints, unless the jury were to believe his rabbit hunting without a weapon story. There is further evidence supporting a guilty verdict. The mysterious pickup and its furtive behavior could lead to further inferences that defendant had been inadvertently abandoned by his felonious comrades in their own flight from Terry Ostrem, only to return in an attempt to find defendant. Also, the color scheme of the mystery pickup is similar to defendant's pickup. Finally, because it is necessary to consider only the supporting evidence whether contradicted or not, *State v. Jellema*, 206 N.W.2d 679 (Iowa 1973), the jury could easily have chosen to disbelieve defendant's alibi story of rabbit hunting in its entirety, especially in light of the fact that defendant was found to be unarmed when arrested, and that his tracks did not originate where the pickup was supposed to be stuck in the snow.

Defendant alleges reversible error due to the failure to read the information to the jury; to announce the plea of not guilty; and, for failure of the information to state the specific crime intended by defendant in entering the structure. Though the record is far from clear, it appears the information was not read to the jury as required by SDCL 23A–24–2(1). *Territory v. King*, 6 Dak. 131, 50 N.W. 623 (1889), was an instance of complete failure of the state to have the indictment and plea read to the jury. The failure was in violation of the Code of Crim.Proc.Dak. § 343,[1] which is

---

1. Section 343 provides as follows:
   (1) If the indictment is for a felony, the clerk or district attorney must read it, and state the plea of the defendant to the jury.

virtually identical to SDCL 23A–24–2(1). There the court held:

> The failure of the district attorney to formally read the indictment and state the plea to the jury after they were sworn was not error, as the record shows that the jury were sufficiently informed of the nature of the charge [sic] against the plaintiff in error, and also of his plea,–the character of his defense.

6 Dak. at 135–136, 50 N.W. at 624. See also: *State v. Hoover*, 89 S.D. 608, 236 N.W.2d 635 (1975).

■ We elect to follow *Territory v. King.* Though we do not mean to intimate that we are condoning such actions on the part of the state, we fail to find, nor has any showing been made, that this has in any way prejudiced this defendant. Moreover, the first instruction given by the trial court substantially states the charge as set out in the information and defendant's plea to this charge. Therefore, any error arising due to this failure was harmless.

The information charges defendant with entering an occupied structure, "with intent to commit a crime therein." Defendant assigns this as error in failing to state the specific crime which defendant intended to commit. In *State v. Provost*, 266 N.W.2d 96 (S.D. 1978), we stated:

> The general rule concerning the sufficiency of an information is that it must enable a person of common understanding to know what is intended from the language contained therein, and it must also apprise the defendant with reasonable certainty of the accusation against him, so that he may prepare his defense and plead the judgment as a bar to a subsequent prosecution for the same offense.
> . . .
> "An information is sufficient if it employs the language of the statute *or its equivalent ... but it must at least in substance contain the necessary elements of the offense. . . .*"

266 N.W.2d at 99 (citations omitted) (emphasis in original).

The information herein employs the language of the statute. It states that defendant entered "an occupied structure with intent to commit a crime therein." What is lacking is an allegation of the ulterior crime.

■ Generally, an information charging burglary is defective in form unless it specifies the ulterior crime intended in making the unauthorized entry. *Adkins v. State*, 389 P.2d 915 (Alaska 1964); *Gomez v. People*, 162 Colo. 77, 424 P.2d 387 (1967); *Bays v. State*, 240 Ind. 37, 159 N.E.2d 393 (1959); cert. denied, 361 U.S. 972, 80 S.Ct. 605, 4 L.Ed.2d 551; *People v. Burd,* 13 Mich.App. 307, 164 N.W.2d 392 (1968); *Champlain v. State*, 53 Wis.2d 751, 193 N.W.2d 868 (1972). "Such a defect does not, however, automatically result in prejudicial error." *State v. Lora*, 213 Kan. 184, 188, 515 P.2d 1086, 1090 (1973).

If the ulterior felony intended in a burglary is made clear at the preliminary hearing, failure to allege the specific intended felony does not constitute reversible error. Such a failure cannot result in surprise, or be considered prejudicial to defendant's substantial rights at the trial, when the intended felony was understood in advance of the trial. *State v. Lora*, supra.

Here, there can be no doubt as to the ulterior felony intended. Testimony at the preliminary hearing clearly indicates the ulterior felony intended was theft. At the preliminary hearing, both Donald Ostrem and Bernice Thissell testified as to personal property missing from the dwelling, and Mrs. Thissell further testified that no one had been given permission to remove the property.

■ Intent to commit theft was instructed by the trial court. It is apparent that one, and only one, ulterior felony was intended, that being theft. Because defendant has not shown prejudice, or surprise, and was sufficiently apprised of the ulterior felony, any error from failing to allege a specific crime is thereby deemed harmless. See also: *People v. Bneses*, 91 Misc.2d 625, 398 N.Y.S.2d 507 (1977); *State v. Sanders*, 28 Or.App. 141, 558 P.2d 1276 (1977); *Com. v. Madison*, 397 A.2d 818 (Pa. 1979); *Com.*

v. *Wilks*, 250 Pa.Super. 182, 378 A.2d 887 (1977).

■ Defendant claims improper comments about his failure to testify were made at trial. It is well-settled law in this state that it is reversible error for the prosecutor to call attention of the jury to the failure of defendant to testify. *State v. Winckler*, 260 N.W.2d 356 (S.D. 1977); *State v. Brown*, 81 S.D. 195, 132 N.W.2d 840 (1965). Moreover, the prosecution may not make direct comments on the failure of defendant to testify, nor may it make indirect allusions designed to accomplish this end and which in fact could accomplish it. *State v. Winckler*, supra; *State v. Best*, 89 S.D. 220, 232 N.W.2d 459 (1975). When the comments are indirect allusions, the test is whether a reasonable intelligent jury would understand these to point out defendant's failure to testify. *State v. Winckler*, supra. We conclude these comments do not constitute reversible error.

■ The comments complained of occurred in the testimony of Sheriff Albers [2] and in the closing argument of the State.[3] The closing argument was not recorded nor transcribed by the court reporter. This resulting in an incomplete record. Failure to include the entire closing argument leaves this court in a position of speculating as to the context of these comments. Defendant would have us presume that this is, by itself, a comment upon the failure of defendant to testify. The rule in this state concerning incomplete records is that "[i]f we draw any presumption from an incomplete settled record, the presumption is that the trial court acted properly." *State v. Hall*, 272 N.W.2d 308, 311 (S.D. 1978); *Schurman v. Schurman*, 60 S.D. 489, 245 N.W. 39 (1932). We therefore conclude

that this was a permissible comment upon the state of the evidence and not an improper comment on defendant's failure to testify. *State v. Parker*, 263 N.W.2d 679 (S.D. 1978). Sheriff Albers' testimony was given as an explanation and justification for the arrest of this defendant found in a snowbank. No reasonable jury could infer it to be a reference to defendant's failure to testify. In fact, at the time of Sheriff Albers' testimony, the prosecution was not in a position to know whether defendant would or would not testify. Therefore, we find no reversible error.

■ Defendant claims it was error for failure to instruct on SDCL 22–32–16 as a necessarily included offense. This court has taken the position that, "[a] trial court is not required to instruct on matters that find no support in the evidence . . . ." *State v. Kafka*, 264 N.W.2d 702, 703 (S.D. 1978) (citations omitted). There is no issue as to whether a burglary was committed. It is irrefutable that the Thissell residence was unlawfully entered with intent to commit a crime and this intent was carried out by removal of certain items of personal property.

We conclude there is no factual basis requiring an instruction on SDCL 22–32–16. Defendant was guilty of burglary or nothing at all. The instructions given to the jury reflect this position, therefore we refuse to find error in failing to instruct on SDCL 22 32 16, as a necessarily included offense.

The next issue raised by defendant is whether the Thissell residence at the time of the burglary constituted an "occupied structure." SDCL 22–1 2(26) defines "occupied structure" as any structure:

---

2. In discussing the circumstances of the arrest, the following exchange took place:

Q: [Prosecuting Attorney]: Did you place him under arrest?
A: [Sheriff Albers]: Yes.
Q: [Prosecuting Attorney]: Did he say anything to you, at that time?
A: [Sheriff Albers]: No.
Q: [Prosecuting Attorney]: Did he try to explain to you, at any time during that initial period when you got to the end of the tracks, why he was there?
A: [Sheriff Albers]: No.

3. The comment in closing argument was not recorded by the court reporter. This in indeed unfortunate. This court is left with mere conjecture as to the context of the prosecuting attorney's comments. The gist of such comment is supplied by affidavit stating:

Prosecuting Attorney: "And he (pointing at the appellant) never did offer an explanation of what he was doing out there that night crawling around in the snow."

(a) Which is the permanent or temporary habitation of any person, whether or not any person is actually present;

(b) Which at the time is specially adopted for the overnight accommodation of any person, whether or not any person is actually present; or

(c) In which at the time any person is present[.]

In support of his position, defendant cites *State v. Celli*, 263 N.W.2d 145 (S.D. 1978). Defendant's reliance on *Celli* is misplaced. *Celli* was decided under prior law which required that a structure be a "dwelling house." [4] The term "dwelling house" was defined in SDCL 22-32-14 as: "[E]very house or edifice, any part of which has usually been occupied by any person lodging therein at night ...." Since the South Dakota burglary statutes have been revised and no longer contain the "dwelling house" element or a provision for fourth-degree burglary, *Celli* is not binding on this court.

Even if *Celli* was binding, we would be forced to conclude that the Thissell residence was an "occupied structure." In *Celli* this court was called upon to define "dwelling house" in relation to a cabin which was occasionally occupied and which was not ready for occupancy at the time defendant entered it.

Here, we are not dealing with a cabin nor are we dealing with a structure which occasionally is occupied. Instead we are dealing with the residence and dwelling of an individual who has resided in such since 1931. Mrs. Thissell testified that she had lived in this exact house since 1931, a total of forty-eight years. Had she returned six days earlier from her trip to the State of Washington, she would have been physically present at the time of the burglary. Under the revised statutes, a residence of forty-eight years does not lose its status as an "occupied structure" merely by a temporary absence, by the occupants, of three months.

Therefore, the Thissell residence was an "occupied structure" as defined in SDCL 22-1-2(26). See also, *People v. Birts*, 16 Mich.App. 237, 167 N.W.2d 829 (1969); *State v. Lovett*, 116 N.H. 571, 364 A.2d 880 (1976).

As to whether the trial court erred in failing to grant a change of venue due to the sheriff's participation in the trial, we follow *State v. Reiman*, 284 N.W.2d 860 (S.D. 1979). The decision as to whether there shall be a change of venue is within the discretion of the trial court. *Reiman*, supra. "[W]e may not disturb the trial court's ruling unless convinced that such discretion has been abused." *State v. Kingston*, 84 S.D. 578, 584, 174 N.W.2d 636, 639 (1970). We are satisfied that this accused was tried by an impartial jury. Therefore, we refuse to find any abuse of discretion by the trial court.

We find no merit in defendant's assertion it was error to refuse to accept an exhibit and the testimony of a defense witness.

Accordingly, the judgment of the trial court is affirmed.

All the Justices concur.

---

4. At the time the defendants in *Celli* were charged, SDCL 22–32–11, the statute under which they were charged and convicted, provided, in pertinent part:

Every person who breaks and enters the dwelling house of another ... with intent to commit a crime is guilty of burglary in the fourth degree.