Present: All the Justices

CHRISTOPHER LEE GILES

v.    Record No. 080906

COMMONWEALTH OF VIRGINIA

OPINION BY
JUSTICE LEROY F. MILLETTE, JR.
February 27, 2009

FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal from a defendant's conviction for burglary, we consider the meaning of dwelling house as a required element of Code § 18.2-89.

BACKGROUND

On the night of September 28, 2005, Christopher Lee Giles participated in the breaking and entering of a house located in Martinsville.  The owner of the house, Oscar Thornton, Jr. (Thornton), inherited it from his mother, who had died on June 28, 2005.

Thornton, whose primary residence is in Baltimore, Maryland, went to the house at least once or twice per month after his mother's death.  Thornton stayed at the house the entire weekend of September 17, 2005, which was just ten days prior to the break in.

The house had furniture in the three bedrooms, living room, family room, and kitchen.  Thornton had his own sleeping quarters in the house, and he kept food in the pantry, cabinets, and refrigerator.  The house had operational utility

services, including electricity and water.  During the break in, Giles took food, quilts, blankets, sheets, towels, bathroom supplies, two televisions, and a videocassette recorder from the house.

Giles' participation in the break in is not in dispute. At the conclusion of the Commonwealth's evidence, Giles moved to strike on the ground that the Commonwealth had failed to establish a prima facie case.  Giles argued that the Commonwealth failed to establish the house was a dwelling house, required as an element of Code § 18.2-89, because no one was living there at the time and it was not being regularly used for sleeping.  The circuit court denied the motion to strike, finding sufficient evidence to support the conclusion that the house was a dwelling house.  The circuit court inferred that Thornton intended to return to the house, and that while he did not spend every night there because he resided in Baltimore, his intent to return was sufficient to find that the house was a dwelling house.  At the close of all the evidence, Giles renewed his motion to strike.  The circuit court again denied the motion and found Giles guilty of burglary, in violation of Code § 18.2-89.  The circuit court sentenced Giles to a term of imprisonment of 20 years, with 13 years and 8 months suspended.

Giles appealed his conviction to the Court of Appeals. The Court of Appeals affirmed the circuit court's judgment in a published opinion, stating that if an occupant of a house maintains it "for immediate or rapid habitation;" inhabits it "on a usual or periodic basis;" and, in periods of absence, "intend[s] to return to the house within a usual or periodic time," the house is a dwelling house under Code § 18.2-89. Giles v. Commonwealth, 51 Va. App. 449, 458-59, 658 S.E.2d 703, 708 (2008). The Court of Appeals concluded that a person may have multiple dwelling houses so long as each house has "humans sleep in it and engage in other functions typically associated with habitation." Id. at 458-59, 658 S.E.2d at 707-08. We granted Giles this appeal.

DISCUSSION

Giles argues that the Court of Appeals erred in approving the circuit court's ruling that the house satisfied the dwelling house requirement of Code § 18.2-89. Giles contends that in order to be a dwelling house, a house must be regularly used for sleeping and other "dwelling-related" activities, such as preparing meals and bathing. According to Giles, the character and content of a structure do not determine whether it is a dwelling; rather, the relevant inquiry is whether the structure is in fact used as a dwelling. Giles argues that the analysis must focus on what takes place in the house as opposed

3

to what is kept in the house and that the issue whether a structure is a dwelling must not be subject to case-by-case factual analysis.

Giles asserts Thornton's testimony was insufficient to prove the house was a dwelling. Giles points out that Thornton testified that he had visited the house twice between June 29, 2005 and September 17, 2005, when he stayed the entire weekend. However, Thornton did not testify that anyone slept in the house, nor that he prepared food, bathed, or engaged in other normal household activity. Giles also contends there is nothing in Thornton's testimony that shows he intended to return to the house.

In response, the Commonwealth asserts that whether a house is used for sleeping is just one among a number of factors a court must consider when determining whether the house is a dwelling house as contemplated by Code § 18.2-89. The Commonwealth contends the court must consider other indicia of habitation, as the circuit court did in this case when it noted the presence of furnishings, food, and operating electricity and water at the house. The Commonwealth argues that from these facts the circuit court properly found that Thornton intended to return to the house. According to the Commonwealth, consideration of the "regular use" of a structure pertains not to the time period in which the structure is used

4

as a habitation, but simply to its use as a habitation as opposed to other uses.  The Commonwealth further asserts that "activities of day-to-day life" must take place in the structure for it to be a dwelling house, but need not occur on a day-to-day basis.  The Commonwealth argues that the contents of a structure serve as indicia of habitation.  For these reasons, the Commonwealth argues that the Court of Appeals applied the proper analysis and did not err in holding that the house was a dwelling house.

Code § 18.2-89 provides, in pertinent part, "[i]f any person break and enter the dwelling house of another in the nighttime with intent to commit a felony or any larceny therein, he shall be guilty of burglary."  The limited issue of statutory interpretation raised in this appeal is the meaning of "dwelling house."  A matter of statutory interpretation such as this presents a pure question of law, which we review de novo.  Young v. Commonwealth, 273 Va. 528, 533, 643 S.E.2d 491, 493 (2007); Budd v. Punyanitya, 273 Va. 583, 591, 643 S.E.2d 180, 184 (2007); Ainslie v. Inman, 265 Va. 347, 352, 577 S.E.2d 246, 248 (2003).

The Court of Appeals framed the issue before it as follows: "The issue we consider here . . . is the extent to which a person must inhabit a house for it to constitute a 'dwelling house' under the statute," Giles, 51 Va. App. at

5

451, 658 S.E.2d at 704; and "the issue is the extent to which a house must be 'regularly use[d]' to qualify as a 'dwelling house.' " Id. at 455, 658 S.E.2d at 706. By employing the phrase "extent to which" a house must be inhabited or regularly used, the Court of Appeals suggested the temporal aspect of habitation is a significant factor in the analysis whether a structure is a dwelling house. Although we agree with the Court of Appeals' conclusion that the house was a dwelling house as contemplated by Code § 18.2-89, we disagree with the Court of Appeals' analysis. Esteban v. Commonwealth, 266 Va. 605, 610, 587 S.E.2d 523, 526 (2003) (Supreme Court may affirm Court of Appeals' judgment when the Court of Appeals reaches the correct result based on a different or an incorrect reason). The focal point of our analysis is the character or use of the place being inhabited.

"[A]t common law, [burglary was] primarily an offense against the security of the habitation, and that is still the general conception of it." Yeatts v. Commonwealth, 242 Va. 121, 140, 410 S.E.2d 254, 266 (1991) (quoting Compton v. Commonwealth, 190 Va. 48, 55, 55 S.E.2d 446, 449 (1949)). We have previously described a person's "home" or "habitation" as being a place "usually occupied for the purposes of the dwelling." Bare v. Commonwealth, 122 Va. 783, 795, 94 S.E. 168, 172 (1917). The focus has been and remains on the manner

6

in which the place is used.  At oral argument, Giles acknowledged that, historically, "[t]he emphasis [has been] on how the structure was used."  Moreover, Giles recognized that, in the present case, the circuit court must consider "what [Thornton's] primary purpose for [the house] was," "what he was using it for . . . whether he was using it for storage" or for some other purpose.  We agree.

Giles' argument fails, however, when he asserts the Commonwealth must prove the regularity of use in a temporal sense to establish that a structure constitutes a dwelling house.  There is no such frequency requirement.  A structure does not have to be physically inhabited every day or week or month to be a dwelling house.  "Burglary laws are based primarily upon a recognition of the dangers to personal safety created by the usual burglary situation -- the danger that the intruder will harm the occupants in attempting to perpetrate the intended crime or to escape and the danger that the occupants will in anger or panic react violently to the invasion, thereby inciting more violence."  Yeatts, 242 Va. at 140, 410 S.E.2d at 266 (quoting Rash v. Commonwealth, 9 Va. App. 22, 25, 383 S.E.2d 749, 751 (1989)).  The danger to personal safety that is sought to be protected does not dissipate simply because the structure is not occupied on a regular basis.  The danger continues irrespective of frequency

7

of habitation so long as when the structure is used, it is used for the purpose of habitation.  A dwelling house does not lose its character as such simply because a person is absent for either a regular or irregular period of time.

This house is analogous to a vacation home.  Although this is an issue of first impression in Virginia, other states have long held that vacation homes are dwelling houses even when unoccupied at the time of the break in.  E.g., Gillum v. State, 468 So.2d 856, 859 (Miss. 1985) (a weekend house, which was usually occupied every other weekend and contained food, clothing, and other necessities, was a dwelling and "[t]he seasonal or intermittent use of a residence . . . does not prevent it from becoming a dwelling"); State v. Albert, 426 A.2d 1370, 1374 (Me. 1981) (a summer cottage that was adapted for overnight accommodation was a dwelling even in the winter when it was uninhabited).

We hold that a house is a dwelling house pursuant to Code § 18.2-89 when the house is used for habitation, including periodic habitation.  Periodic habitation does not require that the house be used at regular intervals.  Rather, periodic habitation requires that when the house is used, it is used for the purpose of habitation.  Thus, a dwelling house is a house that one uses for habitation, as opposed to another purpose.

Although the Commonwealth is not required to prove a structure is inhabited at regular intervals, it must provide sufficient evidence that the structure is used as a habitation to satisfy the "dwelling house" requirement of Code § 18.2-89. The circuit court must analyze the evidence presented to ascertain if there are sufficient indicia of habitation and actual use as a place of habitation for the structure to be deemed a dwelling house.

In applying this analysis, the Commonwealth satisfied its burden in this case.  Upon review, we consider the evidence in the light most favorable to the Commonwealth, the prevailing party below, and we accord the Commonwealth the benefit of all reasonable inferences deducible from the evidence.  Britt v. Commonwealth, 276 Va. 569, 573, 667 S.E.2d 763, 765 (2008); Jay v. Commonwealth, 275 Va. 510, 524, 659 S.E.2d 311, 319 (2008); Bolden v. Commonwealth, 275 Va. 144, 148, 654 S.E.2d 584, 586 (2008).  The house contained furniture in three bedrooms, a living room, family room, and kitchen, as well as quilts, blankets, sheets, towels, and bathroom supplies.  The house had active electricity and water services, and the kitchen was stocked with food in the pantry, cabinets, and refrigerator. Thornton had sleeping quarters in the house, and spent at least one night there over a weekend ten days prior to the break in on September 28, 2005.  Thornton had also stayed in the house at least once or twice per month in the three months following his

mother's death on June 28, 2005.  It is reasonable to infer from the evidence that Thornton slept in the house and prepared food, bathed, and engaged in other activities typically associated with habitation.  The contents of the house and evidence of Thornton's behavior in relation to the house are probative of whether it was used periodically for the purpose of habitation.

CONCLUSION

The evidence presented by the Commonwealth was sufficient to prove Thornton's habitation of the house.  The Court of Appeals did not err in affirming the circuit court's ruling that the house satisfied the dwelling house requirement of Code § 18.2-89.  Thus, Giles was properly convicted of burglary.  We will therefore affirm the judgment of the Court of Appeals.

Affirmed.