COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Beales and Senior Judge Coleman
Argued at Chesapeake, Virginia


MICHAEL ROMULUS JOHNS
                                                          OPINION BY
v.        Record No. 2618-07-1                    JUDGE RANDOLPH A. BEALES
                                                          APRIL 14, 2009
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
                            Johnny E. Morrison, Judge

            Sonya Weaver Roots (Weaver Law Practice, PLLC, on brief), for
            appellant.

            Alice T. Armstrong, Assistant Attorney General II (Robert F.
            McDonnell, Attorney General, on brief), for appellee.


        Michael Romulus Johns (appellant) appeals his statutory burglary conviction.[1]  He

contends that the building that he entered was not a "dwelling house," and, therefore, he cannot

be convicted of statutory burglary under Code § 18.2-91.  Given the particular offense with

which appellant was charged, we find appellant did not enter a "dwelling house," as that term is

defined under Virginia law.  Therefore, we reverse and dismiss his burglary conviction.

                                        BACKGROUND

        John Pouloutides, through his corporation, owned a house at 39 Prospect Parkway in the

City of Portsmouth.  The house was described at trial as a two-story, "single family residence."

Mr. Pouloutides was in the process of remodeling the residence.  Once the renovations were

_____

        [1] The trial court also convicted appellant of grand larceny.  Appellant asked for review of
both convictions in his petition for appeal.  However, this Court granted the petition only in
relation to the statutory burglary conviction.  Therefore, we do not address and do not disturb
appellant's conviction for grand larceny.

completed, he intended to put the house "on the market for someone to live there." At the time of these events, no one lived in the house. No testimony at trial indicated how long the house had been empty. Although the house had a defined living area, dining area, and kitchen, none of these areas were described as containing furniture or any of the normal items found in an inhabited residence. The only items in the house were tools and construction supplies – such as a table saw, a tool belt, levelers, a skill saw, utility knives, tape measures, and sheet rock. For example, Mr. Pouloutides used the kitchen to "store[] [his] tools when [he] was not there."

During the evening of December 8, 2006, Richard Reeder, a neighbor on Prospect Parkway, called and told Mr. Pouloutides to come to the house in Portsmouth. Mr. Pouloutides left his home in Chesapeake, drove to Portsmouth, and discovered that the front door to the Prospect Parkway house was wide open. He entered the house and noticed that a windowpane was broken and that the window was opened. When he had left the property on December 7, 2006, the front door was locked and the window was not damaged.

The house did not have electricity, and Mr. Pouloutides had arrived at the residence after dark. Thus, although he noticed that a table saw was missing, Mr. Pouloutides could not determine if any other items were missing as well. Because he needed to return to his home in Chesapeake quickly, Mr. Pouloutides secured the broken window "so that it wouldn't be able to be opened again," locked the front door, and left the house without investigating any further.

When Mr. Pouloutides returned the next morning, the front door was open again. He then discovered that a different window was broken and that a pane of glass in the rear door was broken. Mr. Pouloutides also discovered that a number of his tools were missing, including a tool belt, tape measures, a framing hammer, levelers, a skill saw, and utility knives.

A few days after the break-ins, the neighbor went to a local pawnshop, and discovered several of the tools that he believed were the tools taken from Mr. Pouloutides's house.

Mr. Pouloutides went to the pawnshop and identified the tools as his. The manager of the pawnshop testified at trial that, when he arrived to open the shop on the morning of December 8, 2006, appellant was waiting outside the door with some of the tools that belonged to Mr. Pouloutides. Appellant sold them to the shop and left. Appellant came back to the shop later in the day and sold more of the tools that had been taken from the house. Appellant later admitted at trial that he sold the tools to the pawnshop, but he claimed that he found the tools in a trashcan. He denied ever entering the house.

Appellant was indicted for "Statutory Burglary," specifically that he "did break and enter in the daytime, or enter without breaking in the nighttime, the dwelling of John Pouloutides." The jury was instructed that, in order to convict appellant of statutory burglary, they needed to find that appellant "without permission broke and entered in the day or nighttime a dwelling house" and did so with the intent to commit larceny.

At trial, once all of the testimony had been presented, the jury was excused and appellant made a motion to strike. As part of that motion, he argued, "[N]o one was living there. I don't know if that qualifies as a dwelling house. I don't know that it does. It may be affixed to the ground, but it was under construction at the time, so I don't believe that's within the statute for statutory burglary . . . ." The trial court denied the motion.

The jury convicted appellant of statutory burglary of a "dwelling house" and grand larceny. Appellant petitioned this Court for an appeal of both convictions. A three-judge panel of this Court granted his petition for appeal "only as to the question of whether the house was a 'dwelling house'" – an issue related only to the statutory burglary conviction. Thus, we do not consider his grand larceny conviction in this appeal.

ANALYSIS

Appellant argues that the residence at 39 Prospect Parkway was not a "dwelling house" as that term is defined for a conviction under the statutory burglary code sections. Therefore, he contends, the trial court erred in denying his motion to strike the evidence.

As an issue of statutory construction, the definition of "dwelling house" is reviewed *de novo* by this Court. Giles v. Commonwealth, 277 Va. 369, 373, 672 S.E.2d 879, 882 (2009). The facts, however, are examined "in the light most favorable to the Commonwealth." Id. at 375, 672 S.E.2d at 883.

Code § 18.2-91, in relevant part, makes it a crime for "any person [to] commit[] any of the acts mentioned in § 18.2-90 with intent to commit larceny." Code § 18.2-90 criminalizes the act of breaking and entering into various buildings, including a "dwelling house." Here, pursuant to the language in the indictment and the jury instructions, the Commonwealth was required to prove that appellant broke into a "dwelling house" in order to convict him of statutory burglary.

The general public may equate the term "house" with any building that appears from the outside to provide habitation at some time, whether in the past, at present, or in the future. However, given the previous review by the Virginia appellate courts, "dwelling house" has a more limited meaning.[2]

---

[2] The Commonwealth claims on brief that "Virginia courts have not had occasion to address the narrow question presented here" and cites a footnote in this Court's previous decision in Giles v. Commonwealth, 51 Va. App. 449, 453, 658 S.E.2d 703, 705 (2008), aff'd on alt. gds, 277 Va. 369, 672 S.E.2d 879 (2009). Technically, the Commonwealth may be correct, as the Virginia appellate courts have only addressed the definition of "dwelling house" in the context of convictions under a different burglary statute – Code § 18.2-89 – not Code § 18.2-91, under which appellant was convicted here. However, as Code § 18.2-91 explicitly references Code § 18.2-90, and that statute references Code § 18.2-89, the meaning of "dwelling house" is the same for all three statutes.

- 4 -

In Rash v. Commonwealth, 9 Va. App. 22, 26, 383 S.E.2d 749, 751 (1989), this Court considered a situation in which the individuals who owned the residence entered by Rash had never lived in the house, and no one had lived in the house for approximately six months prior to Rash's break-in. Id. at 24, 383 S.E.2d at 750. The house was, however, fully furnished when Rash entered, as the owners were preparing it for sale. Id. Based on a review of the common law and other states' statutes and cases, this Court reversed Rash's conviction, holding "that a dwelling is no longer a 'dwelling house' for purposes of Code § 18.2-89 when its occupants leave it without any intention to return." Id. at 27, 383 S.E.2d at 752.

Our Supreme Court recently addressed the issue of "dwelling house" in Giles, 277 Va. 369, 672 S.E.2d 879. There, the homeowner lived in Baltimore, Maryland, but also owned a house in Martinsville, Virginia, which Giles broke into. The owner stayed in the Virginia house on occasional weekends. Id. at 376, 672 S.E.2d at 883. The Virginia house "had active electricity and water services." Id. The owner kept the kitchen stocked with food, he maintained sleeping quarters in the house, and he had "furniture in three bedrooms, a living room, family room, and kitchen." Id. at 375-76, 672 S.E.2d at 883. The Supreme Court found that the Virginia house was a "dwelling house," explaining:

> We hold that a house is a dwelling house pursuant to Code § 18.2-89 when the house is used for habitation, including periodic habitation. Periodic habitation does not require that the house be used at regular intervals. Rather, periodic habitation requires that when the house is used, it is used for the purpose of habitation. Thus, a dwelling house is a house that one uses for habitation, as opposed to another purpose.
> Although the Commonwealth is not required to prove a structure is inhabited at regular intervals, it must provide sufficient evidence that the structure is used as a habitation to satisfy the "dwelling house" requirement of Code § 18.2-89.

Id. at 375, 672 S.E.2d at 883.

Thus, based on the Supreme Court's holding in Giles and this Court's case law, the basic issue in determining whether a residence constitutes a "dwelling house" is whether it is used for habitation, such as sleeping and other usual activities of life, on at least an occasional basis. See id. (finding the house was a "dwelling house" because it was "used periodically for the purpose of habitation"); Rash, 9 Va. App. at 27, 383 S.E.2d at 752 (finding the house was not a "dwelling house" because no one actually lived there or intended to inhabit the home occasionally).

Here, reviewing the evidence in the light most favorable to the Commonwealth, the record contains little to support the Commonwealth's contention that, similar to the house in Giles,[3] Mr. Pouloutides's building was a "dwelling house" for purposes of the burglary statutes. Mr. Pouloutides himself testified that he lived elsewhere and was remodeling the house *for sale*, not so his own family could live there. Mr. Pouloutides did not testify that he ever slept or lived there, had ever slept or lived there, or ever intended to sleep or live there. Instead, his testimony indicated that he owned the building, through a corporation, as a business investment–not for habitation. In addition, none of the evidence suggested that *anyone* who had lived there at one time intended to return and resume living in the house after the remodeling was completed. Mr. Pouloutides's testimony that the house would be placed "on the market for someone to live there," indicated that a future owner (or renter) would live in the house after the completion of his work. In fact, no one slept in the house, even on an irregular basis. The house had no electricity, there were construction tools throughout the kitchen, there were drywall sheets upstairs that needed to be installed, and, apparently, the house was completely unfurnished. Thus, unlike in Giles, no one was using this house for the usual activities of life, no previous

---

[3] The Commonwealth on appeal based its argument on this Court's published opinion in Giles. However, after oral argument in this case, the Supreme Court issued its opinion in Giles, announcing that, "Although we agree with the Court of Appeals' conclusion that the house was a dwelling house as contemplated by Code § 18.2-89, we disagree with the Court of Appeals' analysis." 277 Va. at 374, 672 S.E.2d at 882.

resident intended to return and use the house as a "dwelling house," and the house was not maintained for immediate occupancy.[4]  Id. at 375-76, 672 S.E.2d at 883.

This record contains no evidence that this house was used for habitation.  No one slept there or even used it for the other usual activities of life.  The record also contains no evidence that anyone who had used the home for habitation had any intention of resuming that use.  Thus, given the totality of the circumstances that exist here, we find that the house at 39 Prospect Parkway was not a "dwelling house" under the statutory burglary statute when appellant entered and stole the tools.  The trial court, therefore, erred in denying appellant's motion to strike the evidence.  The evidence in this record does not support a finding that appellant broke into a "dwelling house," as charged in the indictment and as presented in the jury instructions.

CONCLUSION

We find the evidence was not sufficient to prove that appellant broke into a "dwelling house," and the trial court should have granted appellant's motion to strike the evidence. Therefore, we reverse appellant's statutory burglary conviction and dismiss the indictment.

Reversed and dismissed.

---

[4] This case does not present a situation where the inhabitants moved out of a dwelling during remodeling, with the intention of returning to the dwelling after the completion of the work.  To comment on such a situation in this case would be dicta.