COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Kelsey, Beales and Decker
Argued at Chesapeake, Virginia

PHILLIP DAVID YACONIS

                                    MEMORANDUM OPINION[*] BY

v.    Record No. 1363-13-1            JUDGE D. ARTHUR KELSEY
                                              JULY 29, 2014

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
James C. Hawks, Judge

W. McMillan Powers, Assistant Public Defender
(Office of the Public Defender, on brief), for appellant.

Eugene Murphy, Senior Assistant Attorney General
(Mark R. Herring, Attorney General, on brief), for
appellee.

A jury convicted Phillip David Yaconis of statutory burglary, petit larceny, and larceny

with intent to sell or distribute. On appeal, Yaconis challenges his burglary conviction, claiming

that the jury improperly found him guilty on insufficient evidence and that the trial court

improperly excluded relevant evidence. Yaconis also contends that the jury rendered

inconsistent verdicts and that the trial court erroneously imposed a suspended sentence pursuant

to Code § 19.2-295.2(A). Finding no merit in these arguments, we affirm his convictions.

I.

When presented with a sufficiency challenge on appeal, we review the evidence in the

"light most favorable" to the Commonwealth. Commonwealth v. Hudson, 265 Va. 505, 514, 578

S.E.2d 781, 786 (2003). This principle requires us to "discard the evidence of the accused in

conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

the Commonwealth and all fair inferences to be drawn therefrom." Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (emphasis and internal quotation marks omitted). In determining whether there is sufficient evidence to sustain a conviction, moreover, an appellate court must consider "all the evidence" admitted at trial that is contained in the record. Hamilton v. Commonwealth, 279 Va. 94, 103, 688 S.E.2d 168, 173 (2010) (quoting Bolden v. Commonwealth, 275 Va. 144, 147, 654 S.E.2d 584, 586 (2008)).

So viewed, the record shows that Gary Witherow owned a home in Portsmouth in May 2013. He described it as a "second dwelling" for his family. App. at 62. His wife had lived in the home for a year and had left in October 2012 so Witherow could personally perform some renovations. Witherow testified that his wife intended to return to the home when the renovations were finished. During her temporary absence, all of her furniture, family pictures, and personal belongings remained in the home. Utility service to the home (electricity, water, and gas) remained available during the renovations, although Witherow manually turned off many of the services at the home while performing his repairs.

One evening in January 2013, police officers responded to a report about Witherow's home. When they arrived to investigate, they discovered a broken window on the back door of the residence. The officers also noticed insulation and other debris in the backyard. Inside the home, they found "what appeared to be fresh blood" on a bathroom sink and a shirt "that was completely soaked in what appeared to be blood" in a bedroom. Id. at 96. Just outside the front entrance of the home, they found a bag of numerous cut copper pipes with blood on them. The bag also included a video camera and a stocking cap full of pennies.

The police searched the neighborhood and found Yaconis under a car in the fenced-in backyard of a residence that was "almost directly across the street" from Witherow's home. Id.

at 101. His hand was bleeding. After his arrest, Yaconis confessed that he entered the home through the back door and took the stocking cap full of pennies worth about three dollars, although he denied breaking the glass on the door. He also admitted taking the bag of copper pipe from the adjacent shed.[1] Yaconis said that he then took the bag of copper pipe back into the home, exited through the front door, and left the bag on the front porch. He stated that he took the copper pipe, which had a value of more than two hundred dollars, and intended to sell it for scrap.

Prior to trial, the Commonwealth's attorney moved to exclude any mention of the fact that Witherow's house had been condemned in November 2012. She proffered that although the power company had not stopped service to the house, Witherow "had turned the power off himself at one point." Id. at 10-11. The house was then condemned for the "technicality" of "the power being off." Id. at 11. The trial court found the condemnation of Witherow's house to be "irrelevant and misleading," id. at 24, because "the fact that the City had issued some sort of condemnation is misleading and not really probative of anything," id. at 25. The trial court noted that "all the underlying details" and "factors regarding the status of the house" could still be mentioned, including "whether it has electricity or water." Id. at 24-25.

The jury convicted Yaconis of statutory burglary, petit larceny, and larceny with intent to sell or distribute. The trial court imposed the sentence fixed by the jury and added a postrelease supervision term required by Code § 19.2-295.2(A).

---

[1] Witherow testified that prior to the larceny, "[t]here was nothing particularly unusual" about the house. App. at 71. He did not see "any trash or any items strewn about the lawn at all." Id. However, after the larceny, he "noticed immediately that there were little pieces of . . . fiberglass with silver foil-type insulation that was characteristic of plumbing." Id. at 73. When he looked under the house, he saw that "a significant amount of plumbing just wasn't there anymore." Id.

II.

On appeal, Yaconis asserts nine assignments of error, which cluster into four arguments. First, he challenges his statutory burglary conviction, claiming that the evidence was insufficient to prove that the home was a dwelling and that Yaconis had the requisite burglarious intent. Second, Yaconis contends that the trial court erroneously refused to admit his evidence that the home had been condemned. Third, he argues that the jury rendered inconsistent verdicts. And last, he asserts that the trial court erroneously imposed the postrelease supervision term required by Code § 19.2-295.2(A).

## A. EVIDENTIARY SUFFICIENCY[2]

When reviewing factfinding, "[a]n appellate court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Williams v. Commonwealth, 278 Va. 190, 193, 677 S.E.2d 280, 282 (2009) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (quoting Jackson, 443 U.S. at 319). When a jury has rendered its verdict, "it is not for this court to say that the evidence does or does not establish his guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion." Cobb v. Commonwealth, 152 Va. 941, 953, 146 S.E. 270, 274 (1929). Suffice it to say, "[a]n appellate court is no substitute for a jury." Id.

---

[2] We begin our review with Yaconis's challenge to the sufficiency of the evidence, which, if successful, would moot his challenge to the trial court's evidentiary ruling. When addressing sufficiency on appeal, we must consider *all* the evidence — not just the properly admitted evidence. See Code § 19.2-324.1 (abrogating Rushing v. Commonwealth, 284 Va. 270, 726 S.E.2d 333 (2012)); accord 2013 Op. Va. Att'y Gen. 13-027, 2013 Va. AG LEXIS 73, *4 (Aug. 16, 2013); see also McDaniel v. Brown, 558 U.S. 120, 131 (2010) (per curiam); Lockhart v. Nelson, 488 U.S. 33, 40-41 (1988).

1. *Burglarizing a "Dwelling House"*

Yaconis stands by his confession that he entered the home, but claims that, as a matter of law, it could not be considered a "dwelling house" for purposes of the offense of burglary. See Appellant's Br. at 15. We disagree.

Commonly called statutory burglary, a violation of Code § 18.2-91 requires among other things that the burglary involve the "dwelling house of another." The burglary statutes do not define "dwelling house" but instead codify its traditional common law meaning. Rash v. Commonwealth, 9 Va. App. 22, 26, 383 S.E.2d 749, 751 (1989).

> Burglary was, at common law, primarily an offense against the security of the habitation, and that is still the general conception of it. A difference is recognized between the crime of wrongfully entering in the night a house where people live and the crime of entering a house where chickens roost.

Compton v. Commonwealth, 190 Va. 48, 55, 55 S.E.2d 446, 449 (1949).

It is unnecessary that individuals actually live in the home at the very moment of the burglary, so long as the character of the home remains a place capable of habitation and is used at least for "periodic habitation." Giles v. Commonwealth, 277 Va. 369, 375, 672 S.E.2d 879, 883 (2009). "Periodic habitation," however, "does not require that the house be used at regular intervals." Johns v. Commonwealth, 53 Va. App. 742, 747, 675 S.E.2d 211, 214 (2009) (quoting Giles, 277 Va. at 375, 672 S.E.2d at 883). It is enough merely that "when the house is used, it is used for the purpose of habitation . . . as opposed to another purpose." Id. The purpose of habitation can be shown by evidence of prior or present use, anticipated future use, the presence of furniture and furnishings, the availability of utility service, and similar "indicia of habitation." Giles, 277 Va. at 375, 672 S.E.2d at 883. None of these characteristics is indispensable, but one or more must be present for a house to be fairly called a dwelling house.

It is also legally immaterial that the prosecution cannot prove "the regularity of use in a temporal sense" because "[t]here is no such frequency requirement." Id. at 374, 672 S.E.2d at 883. In other words,

> [a] structure does not have to be physically inhabited every day or week or month to be a dwelling house. . . . The danger to personal safety that is sought to be protected does not dissipate simply because the structure is not occupied on a regular basis. The danger continues irrespective of frequency of habitation so long as when the structure is used, it is used for the purpose of habitation. A dwelling house does not lose its character as such simply because a person is absent for either a regular or irregular period of time.

Id. at 374-75, 672 S.E.2d at 883.[3] An infrequently used "vacation home," "a summer cottage" used only for a couple of months, and even "a weekend house" used only for a handful of days each month, can all qualify as dwelling houses for purposes of statutory burglary. Id. at 375, 672 S.E.2d at 883 (citing Gillum v. State, 468 So.2d 856, 859 (Miss. 1985); State v. Albert, 426 A.2d 1370, 1374 (Me. 1981)).

Whether the evidence satisfies the legal definition of dwelling house presents a question of fact. In this case, ample evidence supports the rationality of the jury's finding that the Witherow home was a dwelling house. Witherow testified that

- the house was a "second dwelling" for his family, App. at 62,

- his wife had lived there for over a year and had left a few months earlier so Witherow could renovate the home,

- his wife intended to resume her residence there when the renovations were finished,

---

[3] We took a narrower view of dwelling house in Giles v. Commonwealth, 51 Va. App. 449, 458-59, 658 S.E.2d 703, 708 (2008). Though our holding was affirmed, the Virginia Supreme Court expressly rejected our view that a house must be "regularly used" and that "the temporal aspect of habitation is a significant factor in the analysis whether a structure is a dwelling house." Giles, 277 Va. at 374, 672 S.E.2d at 882.

- 6 -

- all of her furniture, family pictures, and personal belongings remained in the home, and

- utility service to the home (electricity, water, and gas) remained available during the renovations.

These circumstances provide ample evidence to prove that the home Yaconis broke into was a dwelling house for purposes of Code § 18.2-91.

### 2. Burglarious Intent

Yaconis also contends that the evidence was insufficient to prove that he entered the home with intent to commit larceny. We again disagree.

"When an unlawful entry is made into the dwelling of another, the presumption is that the entry is made for an unlawful purpose." Scott v. Commonwealth, 228 Va. 519, 524, 323 S.E.2d 572, 575 (1984) (quoting Ridley v. Commonwealth, 219 Va. 834, 836, 252 S.E.2d 313, 314 (1979)); see also Velasquez v. Commonwealth, 276 Va. 326, 329, 661 S.E.2d 454, 456 (2008); Tompkins v. Commonwealth, 212 Va. 460, 461, 184 S.E.2d 767, 768 (1971); Hucks v. Commonwealth, 33 Va. App. 168, 175, 531 S.E.2d 658, 661 (2000).[4] That presumption does not establish the specific unlawful purpose motivating Yaconis, but it does undermine his assertion that his intent was entirely lawful. To discern specific intent, factfinders must necessarily look to the "surrounding facts and circumstances" before, during, and after the break-in. Scott, 228 Va.

---

[4] "As with the other old presumptions, this one is characterized as a permissive inference, not a conclusion about an element of the offense." John L. Costello, Virginia Criminal Law & Procedure § 9.2[3], at 141 (4th ed. 2008). In this context, "an inference, sometimes loosely referred to as a presumption of fact, does not compel a specific conclusion." Martin v. Phillips, 235 Va. 523, 526 n.1, 369 S.E.2d 397, 399 n.1 (1988), overruled in part on other grounds by Friendly Ice Cream Corp. v. Beckner, 268 Va. 23, 597 S.E.2d 34 (2004). "An inference merely applies to the rational potency or probative value of an evidentiary fact to which the fact finder may attach whatever force or weight it deems best." Id. (citing 9 John H. Wigmore, Evidence in Trials at Common Law § 2491(1), at 304 (Chad. rev. 1981)).

at 524, 323 S.E.2d at 575; see also Robertson v. Commonwealth, 31 Va. App. 814, 822, 525 S.E.2d 640, 644 (2000).

In this case, a rational jury could conclude that Yaconis intended thievery at the time he entered the Witherow home. That is, after all, exactly what he did. After breaking through the back door, he stole a bag of pennies found in the home and also stole a bag of copper pipe, which he admitted that he intended to resell. Yaconis left the premises only because he sustained an injury during the break-in. These circumstances are more than sufficient to satisfy the specific intent requirement alleged in the statutory burglary indictment against Yaconis. See generally Vincent v. Commonwealth, 276 Va. 648, 654, 668 S.E.2d 137, 141 (2008) (holding that "the specific intent with which an unlawful entry is made may be inferred from the surrounding facts and circumstances" (internal quotation marks omitted)).

## B. EXCLUSION OF EVIDENCE OF CONDEMNATION

Yaconis argues that the trial court erroneously granted the Commonwealth's motion to exclude any mention of the fact that Witherow's house was condemned.

An appellate court does not review evidentiary decisions *de novo*. Rather, "[g]iven the broad discretion of a trial court over evidentiary matters, we apply a deferential abuse-of-discretion standard of appellate review." Seaton v. Commonwealth, 42 Va. App. 739, 752, 595 S.E.2d 9, 15 (2004) (internal quotation marks omitted). "This standard, if nothing else, means that the trial judge's 'ruling will not be reversed simply because an appellate court disagrees.'" Thomas v. Commonwealth, 44 Va. App. 741, 753, 607 S.E.2d 738, 743 (quoting Henry J. Friendly, Indiscretion about Discretion, 31 Emory L.J. 747, 754 (1982)), adopted upon reh'g en banc, 45 Va. App. 811, 613 S.E.2d 870 (2005). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." Joyce v. Commonwealth, 56 Va. App. 646,

- 8 -

663, 696 S.E.2d 237, 245 (2010) (quoting Grattan v. Commonwealth, 278 Va. 602, 620, 685 S.E.2d 634, 644 (2009)).

"[E]vidence has [logical] relevance if it tends to cast any light on any material point." Thomas, 44 Va. App. at 753, 607 S.E.2d at 744. Given our standard of review, "a great deal must necessarily be left to the discretion of the court of trial, in determining whether evidence is relevant to the issue or not." John Crane, Inc. v. Jones, 274 Va. 581, 590, 650 S.E.2d 851, 855 (2007) (internal quotation marks omitted). Even if logically relevant, moreover, evidence can be excluded — and thus sometimes called legally irrelevant — if its probative value is substantially outweighed by the "likelihood of confusing or misleading the trier of fact" or being "needlessly cumulative." Rule 2:403. This determination involves a "balancing test" committed to the "sound discretion" of the trial court. Gamache v. Allen, 268 Va. 222, 227-28, 601 S.E.2d 598, 601 (2004).

Here, the trial court allowed evidence that Witherow had personally turned off most of the electricity to the house, but found that it would be "irrelevant and misleading" to also mention the condemnation of the house based on that "technicality." App. at 11, 24. We cannot say the court abused its discretion in making this finding.[5] By allowing the jury to consider the factual basis for the condemnation, but excluding any mention of condemnation, the trial court eliminated the possibility that the jury would have speculated that there must have some

---

[5] Our holding moots the necessity to address Code § 8.01-678, which makes "harmless-error review required in all cases." Ferguson v. Commonwealth, 240 Va. ix, ix, 396 S.E.2d 675, 675 (1990) (emphasis in original and text in parenthetical to statutory citation); see also Walker v. Commonwealth, 144 Va. 648, 652, 131 S.E. 230, 231 (1926) (noting that the harmless error doctrine "puts a limitation on the powers of this court to reverse the judgment of the trial court — a limitation which we must consider on every application for an appeal and on the hearing of every case submitted to our judgment"); Kirby v. Commonwealth, 50 Va. App. 691, 699, 653 S.E.2d 600, 604 (2007); Tynes v. Commonwealth, 49 Va. App. 17, 23 n.3, 635 S.E.2d 688, 690 n.3 (2006).

reason for the condemnation other than the counterintuitive, but wholly uncontested, fact that Witherow voluntarily shut off the power. The court's ruling also avoided the likelihood that the jury could be confused by the dissimilarity between the regulatory declaration of condemnation, a determination used exclusively for the purposes of municipal law, and the judicial definition of "[p]eriodic habitation," an unrelated concept used for the purposes of the law of burglary. Johns, 53 Va. App. at 747, 675 S.E.2d at 214.

## C. INCONSISTENT JURY VERDICTS

Yaconis contends that the jury rendered inconsistent verdicts when it convicted him of petit larceny and grand larceny with intent to sell or distribute. He suggests that when the jury convicted him of petit larceny, it was simultaneously finding him not guilty of grand larceny of the copper pipe. See Appellant's Br. at 20-21. Though we do not share this assumption,[6] it would not matter even if we did.

In Virginia, "it is permissible for juries to reach inconsistent verdicts." Ludwig v. Commonwealth, 52 Va. App. 1, 12, 660 S.E.2d 679, 684 (2008); see Gaines v. Commonwealth, 39 Va. App. 562, 570, 574 S.E.2d 775, 779 (2003) (*en banc*) ("Consistency in jury verdicts is not required."). Thus, "the fact that verdicts may, on their face, arguably appear inconsistent does *not* provide a basis to reverse either conviction on appeal, provided the evidence is sufficient to support each verdict." Tyler v. Commonwealth, 21 Va. App. 702, 708, 467 S.E.2d 294, 297 (1996) (quoting Pugliese v. Commonwealth, 16 Va. App. 82, 96, 428 S.E.2d 16, 26 (1993)). "Jury verdicts may appear inconsistent because the jury has elected through mistake,

---

[6] As the Commonwealth correctly points out, "there clearly were at least two thefts, the taking of the money from the house and the taking of the bag and the pipes from the shed. The jury may have found Yaconis guilty of petty larceny of the pennies and grand larceny with intent to resell of the pipes." Appellee's Br. at 17.

compromise, or lenity to acquit or to convict of a lesser offense for one charged crime that seems in conflict with the verdict for another charged offense." Id.

## D. POSTRELEASE SUPERVISION TERM

Finally, Yaconis contends that the trial court erred by adding to his sentence a postrelease supervision term required by Code § 19.2-295.2(A). Given his convictions — which we affirm on appeal — the trial court had no choice but to impose the additional term. The statute is mandatory. Wright v. Commonwealth, 275 Va. 77, 81, 55 S.E.2d 7, 9 (2008); Alston v. Commonwealth, 274 Va. 759, 769-70, 652 S.E.2d 456, 462 (2007). Its terms "comprise part of the maximum term of incarceration permitted by statute and are added to the term that can otherwise be imposed upon a convicted felon." Wright, 275 Va. at 81, 55 S.E.2d at 9.

## III.

Finding no merit in the arguments asserted by Yaconis, we affirm his convictions for statutory burglary, petit larceny, and grand larceny with intent to sell or distribute.

Affirmed.